[Crim. No. 31466. Second Dist., Div. Five. Feb. 24, 1978.]

In re LARRY T., a Minor, on Habeas Corpus.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Kenneth I. Clayman, Stanley Avram Goldman and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Donald J. Oeser and Beverly K. Falk, Deputy Attorneys General, for Respondent.

**OPINION**

**KAUS, P. J.**—Petitioner seeks immediate release from the jurisdiction of the California Youth Authority.

These are the undisputed facts: Petitioner was born on March 4, 1959 and therefore reached his 18th birthday on March 4, 1977. He was adjudged a ward of the juvenile court on December 17, 1975, and has continued in that status until the present time. On March 11, 1977 a juvenile court petition was filed, alleging that he came within the provisions of section 602 of the Welfare and Institutions Code for an offense committed on January 17, 1977. One count of that petition was found to be true on August 3, 1977. The matter was continued to August 17, 1977, for disposition.

Meanwhile, in June 1977, petitioner was charged by information with having committed a burglary on April 30, 1977—about two months after he reached his majority. On August 15, 1977, he pleaded guilty to second degree burglary, after being advised that if the juvenile court committed him to the Youth Authority, any time he might have to serve in connection with the burglary conviction could be served at a Youth Authority facility. Following his plea, he was granted probation for three years on various conditions, one of which was that he spend six months in the county jail, with credit for time served, the court specifying that the jail term could be served in a Youth Authority facility. On August 17, 1977 the juvenile court committed him to the Youth Authority, which then detained him at the Mount Bullion Youth Conservation Camp.

■ On September 21, 1977, he petitioned the juvenile court for an order terminating Youth Authority jurisdiction, which order was denied on October 13, 1977. Petitioner claims that *In re Dennis J.* (1977) 72 Cal.App.3d 755 [140 Cal.Rptr. 463], compels such termination. We disagree. We emphasize, however, that the only question before us is Youth Authority jurisdiction. Thus, we are not concerned with possible issues relating to the propriety of continued adult probation. (See fn. 2, *post,* and preceding text.)

The facts in *Dennis J.* were these: A series of juvenile court petitions charging Dennis with various crimes had been sustained, the last one on June 3, 1976. Dennis was then 16 years old. On August 18, 1976, another juvenile court petition was filed, alleging that Dennis had committed rape, burglary and robbery. He was found unfit for further juvenile court handling (Welf. & Inst. Code, § 707) and eventually pleaded guilty to second degree robbery in the superior court. Probation was granted, but he was ordered to serve one year in the county jail. Thereafter the juvenile court disposed of the previously sustained petitions by committing him to the Youth Authority. In the words of the court "[t]he net effect of the juvenile court order [was] that upon completion of the one-year county jail term as a condition of probation, Dennis will revert to the custody of the Youth Authority whose jurisdiction could extend beyond the three-year probationary period . . . and during the first two years of that commitment he would be subject to the concurrent supervision of the Los Angeles County Probation Department and ultimately to the superior court that placed him on probation." (*Id.,* p. 759.)

Such concurrent jurisdiction of the Youth Authority and the superior court carried a potential for conflict which the court found unacceptable although it had "no doubt of the ability of the superior court, the juvenile court and the Youth Authority to amicably resolve such conflicts. . ." (*Id.,* p. 762.)

Petitioner, of course, argues that *Dennis J.* stands for the proposition that such concurrent jurisdiction is never permissible; by filing this petition rather than an appeal from the superior court conviction, he expresses his preference for adult treatment.

We do not, however, read *Dennis J.* as broadly as petitioner. He overlooks certain vital factual differences between that case and his own, each of which was an express basis of the *Dennis J.* opinion.

First: Dennis was charged and convicted in the superior court only after the juvenile court made an express finding that he was unfit for further juvenile court treatment. *Dennis J.* properly characterized this finding as a determination that he could not "be rehabilitated and that the public could not be adequately protected . . . by any of the dispositional options available to that court, which options included commitment to the Youth Authority." (*Id.,* p. 760.)

Here, in contrast, no such determination was ever made. The only reason for petitioner being charged in the superior court was that at the time of his latest crime he had passed his eighteenth birthday.

Second: in *Dennis J.,* the court pointed out that when Dennis was placed on probation in the superior court, that court had his entire record before it and that nothing in the superior court proceedings "suggests that the judge, in placing Dennis on probation, contemplated an additional commitment by the juvenile court or that the sentence was lessened because of that possibility." (*Id.,* p. 759.) Here the record shows exactly the opposite: the superior court was fully aware that the most recent juvenile court petition had not been disposed of and that petitioner might be sent to the Youth Authority. Therefore it not only provided that the six months' confinement could be served with the Youth Authority, but at the end of the proceedings on August 15, 1977, instructed petitioner as quoted in the footnote.[1]

[1]"Mr. [T.], do you understand that when you are released from custody on our case or custody on the Youth Authority case that is pending for sentenc, when you are released, you must report to the probation department. You are on formal probation to this court. Do you understand?"

Finally in *Dennis J.*, the court was convinced that the order on appeal before it, that is the juvenile court order committing Dennis to the Youth Authority, which was made after the superior court had placed him on probation, was "penal in nature and the result of the juvenile court's dissatisfaction with the sentence imposed by the superior court in the adult proceeding." (*Id.*, p. 761.) Nothing of the kind is revealed by the record before us.

*Dennis J.* is therefore, clearly distinguishable. This is not to deny the possibility of future friction between the Youth Authority and the superior court. We have, however, no reason to suppose that our judicial system, if called upon to intervene, would be incapable of solving such problems as may arise. In fact, the superior court may wish to consider deleting further probation supervision as ordered on August 15, 1977, before petitioner was committed to the Youth Authority.[2] Such an order would completely eliminate future conflicts. Petitioner, of course, prefers probation supervision to Youth Authority control and has, therefore, mounted this jurisdictional attack on his commitment. Undoubtedly petitioner's solution—termination of Youth Authority jurisdiction —would also avoid any possibility of conflict, but at what cost? It would permit Youth Authority committees to free themselves from Youth Authority confinement[3] by committing adult crimes, or force prosecutors to look the other way when such crimes come to their attention, lest by getting a conviction they risk advancing the criminals' release to society.

Petitioner's response to this *reductio ad absurdum* is that Youth Authority committees in his position do not "read the Advance Sheets well enough to grasp the *Dennis J.* rule" and would not, in any event, want to "give up the protective nature of the juvenile system for the punishment-oriented adult system."

---

[2] If the Youth Authority commitment had preceded the sentence in the superior court, it is very doubtful that the court would have made the order placing petitioner on probation for three years, which order violated section 1731.5, subdivision (c) of the Welfare and Institutions Code in spirit, though not in law. Section 1731.5 states the conditions under which certain adult offenders may be committed to the Youth Authority by the superior court. One of these is that the defendant "is not granted probation." Quite arguably this indicates a legislative policy that a defendant who has already been committed to the Youth Authority should not be placed on probation. That, however, was not the situation which confronted the court on August 15. At that time a Youth Authority commitment was a mere possibility, not an accomplished fact.

[3] Depending, of course, on the nature of the underlying violation, Youth Authority confinement may extend to a person's 23d birthday (Welf. & Inst. Code, §§ 607, 731, 1769,) and beyond. (Welf. & Inst. Code, § 1800.)

With respect to petitioner's first point, we would merely say that it is poor policy to tolerate loopholes which immunize or even reward anti-social conduct on the presumption that they will not be discovered. As regards petitioner's second point, we cannot help feeling that at least some Youth Authority committees would—shortsightedly, to be sure—sacrifice lengthy Youth Authority protection for a short dose of adult punishment.

Writ denied.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied March 17, 1978, and the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied April 20, 1978.