[Civ. No. 47151. First Dist., Div. Two. Apr. 28, 1980.]

In re JESSE McM., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JESSE McM., Defendant and Appellant.

COUNSEL

Richard M. Ladden, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ROUSE, J.—Jesse McM., a minor, appeals from an order declaring him a ward of the court and committing him to the California Youth Authority (hereafter Youth Authority).

On May 3, 1979, an amended petition was filed in the juvenile court charging Jesse McM., a 17-year-old minor, with 2 counts of sodomy, in violation of section 286 of the Penal Code; and two counts of committing a lewd and lascivious act upon a child, in violation of section 288 of the Penal Code. He denied the allegations charged.

Following a jurisdictional hearing, the court found the allegations of the amended petition to be true and ordered Jesse committed to the Youth Authority for a maximum period of five years. Since Jesse does not challenge the sufficiency of the evidence presented at the hearing, we shall avoid the somewhat sordid details and confine ourselves to a discussion of those facts which are necessarily involved in the resolution of issues raised in this appeal.

Jesse's first contention is that, because he was deprived of his right to a public trial, the court's finding of jurisdiction must be reversed. He reasons that, since the defendant in a criminal trial has the constitutional right to a public trial, the same right should exist in juvenile court proceedings. Jesse concedes that section 346 of the Welfare and Institutions Code[1] requires that the minor and his parent must affirmatively request a public trial; however, he contends that he did make such a request in a timely manner. He also asserts that the court violated section 346[1] when it allowed a friend chosen by Jesse's mother to remain in the courtroom with her.

A recent California Supreme Court pronouncement on the subject makes it clear that a minor possesses no constitutional right to a public trial in juvenile court proceedings. In *In re Mitchell P.* (1978) 22 Cal.3d 946, 950-951 [151 Cal.Rptr. 330, 587 P.2d 1144], the court reaffirmed the rule that disparate treatment may be accorded to persons charged with crimes and persons charged with juvenile misconduct. The court rejected an argument that a minor in a juvenile court proceeding was entitled to the benefit of a statute (§ 1111 of the Pen.

---

[1]We think that Jesse intended to refer to section 676 of the Welfare and Institutions Code, rather than 346, since the latter section pertains to proceedings involving dependent children. However, the language of the two sections is identical. Henceforth, our reference herein will be to section 676, rather than section 346.

Code) which provided that a criminal conviction could not be based solely upon the uncorroborated testimony of an accomplice. In so holding, the court quoted with approval the following language from *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 550 [29 L.Ed.2d 647, 663, 91 S.Ct. 1976]: "'If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system *and, possibly, the public trial.*'" (P. 953; italics supplied.) It is evident from this language that a public trial in a juvenile court is neither constitutionally mandated nor, in most instances, even desirable.

Section 676 of the Welfare and Institutions Code provides that "Unless requested by the minor concerning whom the petition has been filed and any parent or guardian present, the public shall not be admitted to a juvenile court hearing. The judge or referee may nevertheless admit such persons as he deems to have a direct and legitimate interest in the particular case or the work of the court."

Jesse reads section 676 of the Welfare and Institutions Code as requiring that the public in general be admitted to the hearing if the minor and his parent so request. Here, however, the parent made no such request. The request for a public hearing was made solely by counsel on behalf of the minor. Further, we agree with the judge that such a request must be made in a more timely manner, and not partway through the hearing, after one of the two victims has already completed his testimony.

We are satisfied that in enacting section 676, the Legislature did not intend to grant the minor and his or her parent an *absolute* right to a public hearing, without any regard for the circumstances of the case. Such an interpretation would appear to be incompatible with the last sentence of section 676, which permits the judge, in the exercise of his discretion, to "admit such persons as he deems to have a direct and legitimate interest in the particular case or the work of the court."

Even in criminal trials, the trial court has discretion to close portions of the trial to the public, without the consent of the defendant, where there is good cause based upon justice or the protection of the parties. (*People* v. *Cash* (1959) 52 Cal.2d 841, 846 [345 P.2d 462].) In *Kirstowsky* v. *Superior Court* (1956) 143 Cal.App.2d 745, 754 [300 P.2d 163], the court quoted with approval from Annotation 156 A.L.R. at page 289: "'A criminal trial judge, in the exercise of a sound discretion,

may exclude members of the public as it may become reasonably necessary in order to protect a witness or party from embarrassment by reason of having to testify to delicate or revolting facts, as a child, or where it is demonstrated that the one testifying cannot, without being freed from such embarrassment, testify to facts material to the case.'"

In this instance, it was necessary for two boys, aged nine and ten, to testify to delicate and revolting facts. Under such circumstances, even if Jesse's request for a public trial had been made in a more timely fashion and his mother had joined in said request, we find that the situation nevertheless was one where it was appropriate for the court to exercise its discretion by denying Jesse's request for a public trial.

■ Jesse also complains that the court erred in allowing one companion of his mother's choice to remain in the courtroom during the hearing. The argument is without merit. Jesse's mother had a direct and legitimate interest in the case. The nature of the charges against her son were such that it might be expected that the hearing would be an ordeal for her. Under these circumstances, it was entirely reasonable for the court to allow one companion to remain in the courtroom with her to furnish moral support.

■ Jesse's final argument is that the court erred in committing him to the Youth Authority. He points out that section 734 of the Welfare and Institutions Code provides that a ward shall not be committed to the Youth Authority "unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." Jesse asserts that, since he was a first offender, the court should not have committed him to the Youth Authority without first attempting other less restrictive and punitive placements. He also contends that there was evidence that he was mentally disturbed and in need of psychological treatment which would not be available at the Youth Authority.

Jesse relies upon the case of *In re Aline D.* (1975) 14 Cal.3d 557 [121 Cal.Rptr. 816, 536 P.2d 65], where the California Supreme Court held that the juvenile court had abused its discretion by committing a nondelinquent or marginally delinquent minor to the Youth Authority for the sole reason that there was no other suitable placement facility available. The Supreme Court concluded that, regardless of the unavailability of other suitable facilities, a commitment to the Youth

Authority could not be upheld absent a determination by the juvenile court that the minor would probably be benefited by such commitment. (Pp. 562-563.) The court stated that a commitment to the Youth Authority should generally be viewed as a last resort to be utilized only after all else has failed and the minor has already been the subject of a progressively restrictive and punitive series of disposition orders. (P. 564.) The court also expressed the view that Youth Authority commitments are "inappropriate" in certain cases, including those where the minor is mentally retarded or mentally disturbed and is in need of remedial treatment which would not be available at the Youth Authority. (Pp. 564-565.)

The argument that *In re Aline D., supra*, 14 Cal.3d 557, sets forth an ironclad rule that a Youth Authority commitment must invariably be preceded by less restrictive placements, was recently rejected by the California Supreme Court in *In re John H.* (1978) 21 Cal.3d 18, 27 [145 Cal.Rptr. 357, 557 P.2d 177]. In that case, the court held that the circumstances in a particular case may well suggest the desirability of a Youth Authority commitment despite the availability of such alternative dispositions as placement in a county camp or ranch. The court pointed out that *Aline D.* stressed the importance of finding a probable benefit to the minor before a Youth Authority commitment can be upheld, and that "In the present case, such a finding was made and was included in the court's order." (P. 27.)

In this case, the probation officer's report recommended a Youth Authority commitment for Jesse because of the nature of his offense and his unwillingness to acknowledge that he had a problem. The report pointed out that the need for a secure detention facility precluded placement in any private institutional setting. Also, the probation officer was of the opinion that diagnostic services would be offered to the minor at the Youth Authority and that it might be possible to transfer him to Atascadero State Hospital, pursuant to section 1756[2] of the Welfare and Institutions Code, if the staff of the Youth Authority deemed such action appropriate.

At the disposition hearing, the court expressed the view, based upon its past experience, that Jesse would not be accepted for placement in a

---

[2]Section 1756 provides that "any mentally disordered, or developmentally disabled person" confined in a state correctional school may be transferred to a state hospital if it is the opinion of the director of the Youth Authority that the rehabilitation of such person will be expedited by treatment at a state hospital.

private home or facility. The probation officer concurred in this opinion and also stated that the psychologist's evaluation of Jesse made it evident that placement in an open setting would not be appropriate, particularly since there was a definite need to protect the community from a recurrence of the type of behavior which had caused Jesse to be declared a ward of the court. The probation officer also stated that it was the practice at the Youth Authority to conduct a three-week diagnostic evaluation when a minor arrived at the facility, and that if it was determined that the minor had a special problem, he would be placed in a program where he would be treated by a psychiatrist, a psychologist and two social workers.

The juvenile court then stated that it had given the matter a great deal of thought and had concluded that a commitment to the Youth Authority was appropriate for Jesse. The court observed that no private facility would accept Jesse, that the juvenile hall had no individualized program which would suit his needs and that placement at the ranch would be inappropriate for the same reason and also because of inadequate security.

Thus, it is clear from the record that the Youth Authority commitment was made only after a thorough consideration of the alternatives and after the court had reached the conclusion that such commitment would benefit Jesse and would provide him with a rehabilitation program fitted to his needs. The situation differs from that which existed in *In re Aline D., supra*, 14 Cal.3d 557, in two crucial aspects: here the Youth Authority commitment was not based solely upon the lack of alternative placements, but also upon the court's belief that Jesse would benefit from such placement; and whatever may have been the case when *In re Aline D.* was decided, the testimony in this case shows that the Youth Authority now has a program designed to meet the needs of mentally disturbed minors such as Jesse.

The order is affirmed.

Taylor, P. J., and Miller, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 2, 1980.