[No. C014101. Third Dist. Feb. 4, 1994.]

In re RANDY J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RANDY J., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication except for part IV of the Discussion.

**COUNSEL**

Robert J. Holcomb, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stan Cross and Laura I. Heidt, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DAVIS, J.**—The focus of this appeal by minor Randy J. is to obtain custody credits—for time spent both on "house arrest" and in two of his nonsecure prior placements—against his maximum term of commitment to the Youth Authority. He also claims the amount of credit otherwise calculated by the juvenile court is incorrect. In the published portion of this opinion, we reject the former contention. In the unpublished portion, we decline to reach the latter. As a result, we shall affirm.

### Facts

The nature of the minor's appellate contentions renders irrelevant any facts relating to his offenses, so we will not recount them. Pursuant to a July 1989 petition, the juvenile court ordered the minor to be subject to home arrest from July 24 to August 14, and again from September 26 to February 28, 1990. At a March 15, 1990, dispositional hearing, the court determined the minor was subject to a maximum period of physical confinement of five years, against which he was entitled to credit of twenty-eight days. The court removed the minor from his parents' custody, granted probation, and committed him to the custody of the probation department for placement with a relative, foster home, group home, or private school.

The probation department placed the minor at an institution called "Pride House" in Martinez on April 2. On June 6, the minor ran away from the placement and was taken into custody by the probation department on June 8. According to the respondent, the minor returned to Pride House on June 12. The minor ran away a second time on June 19; the probation department obtained a bench warrant for his arrest. The probation department obtained custody of the minor on July 29.

Pursuant to a supplemental petition filed in August based on the failed placement with Pride House, the court ordered the minor committed to the Youth Authority, but suspended the commitment in favor of a placement with a Nevada-based "Rite of Passage" program. At this time, the court calculated predispositional custody credits of 85 days. The minor arrived at Rite of Passage on October 18.

Although the minor received a satisfactory evaluation of his progress in the program in February 1992, on March 15 he failed to return after a home visitation. On May 4, he was involved in an accident while driving a stolen car. Giving the police an alias, he was processed as an adult and subsequently escaped from the Men's Honor Farm on May 18. On June 18, the

probation department regained custody of the minor.[2] Pursuant to a supplementary petition based on the minor's involvement with the stolen car, the court ordered the minor committed to the Youth Authority on July 28. The court calculated the maximum term of confinement at five years, eight months, and the amount of predispositional custody credits at one hundred eighty-six days.

## DISCUSSION

## I

In pertinent part, Welfare and Institutions Code section 726 (undesignated section references will be to this code) provides, "In any case in which the minor is removed from the physical custody of his parent . . . as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not by held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense . . . which brought . . . the minor under the jurisdiction of the juvenile court. [¶] As used in this section and Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in [Pen. Code, 1170, subd. (a)(2)], but without the need to follow the provisions of [Pen. Code, § 1170, subd. (b)] or to consider time for good behavior or participation pursuant to [Pen. Code, §§ 2930-2932], plus enhancements which must be proven if pled." The statute subsequently defines physical confinement as "placement in a juvenile hall, ranch, camp, forestry camp[,] or *secure* juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority."[3] (Italics supplied.)

As a less restrictive alternative for a section 602 ward to the placements otherwise authorized by sections 730 and 731 (i.e., secure facilities and the

---

[2]After turning 18 years old in July, the minor was transferred to the county jail pending disposition of his case.

[3]To set out the provisions of the pertinent cross-referenced statutes, section 730 provides in relevant part, "When a minor is adjudged a ward of the court on the ground that he is a person described by Section 602, the court may order any of the types of treatment referred to in Section 727, and as an additional alternative, may commit the minor to a juvenile home, ranch, camp or forestry camp. If there [are none of the latter alternatives] within the county, the court may commit the minor to the county juvenile hall."

In relevant part, section 731 provides, "When a minor is adjudged a ward of the court . . . [under] Section 602, the court may order any of the types of treatment referred to in Sections 727 and 730 and, in addition, may order [restitution, a fine, uncompensated work programs, commitment to a sheltered-care facility, or family counseling as a condition of continued parental custody] or may commit the minor to the Department of the Youth Authority. [¶] A minor committed to the Department of the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult [for the same crime or crimes]."

Section 727 will be subsequently cited in the text.

Youth Authority), those statutes authorize the juvenile court to order a placement pursuant to section 727 (*In re Harm R.* (1979) 88 Cal.App.3d 438, 443 [152 Cal.Rptr. 167]), which provides in pertinent part that "[w]hen a minor is adjudged a ward of the court on the ground [of being] a person described by Section[s 601 or 602]" and the court does not (or cannot) order probation, "[t]he court shall order the care, custody, and control of the minor to be under the supervision of the probation officer who may place the minor in any of the following: [¶] (1) The home of a relative. [¶] (2) A suitable licensed community care facility. [¶] (3) With a foster family agency to be placed in a suitable licensed foster family home or certified family home . . . ." (Italics added.) By statute, these placements cannot be "secure" facilities because they are used as placements for section 601 wards. (§ 207 [if a section 601 ward "is detained, he or she shall be detained in a nonsecure facility provided for in . . . Section 727"].)

With these statutes in mind, we now address the minor's arguments. Conceding that neither Pride House nor Rite of Passage is a secure facility as defined by section 726,[4] the minor asserts he is nonetheless entitled to credit for time spent in these facilities (as well as for home arrest). To render his analysis down to its bare bones, he claims the provisions of Penal Code section 2900.5 (the statute governing custody credits for adult offenders) are either directly applicable to him or should be applied by analogy in interpreting section 726. In the alternative, he claims there is a violation of the constitutional doctrine of equal protection if he is denied custody credits.

II

In terms of statutory analysis, there are two components to our inquiry. The first is whether the Legislature intended minors to receive custody credits. Only then can we consider in what types of placements the Legislature intended minors to accrue credit against any subsequent physical confinement. The axiom guiding our inquiry is that our primary task in construing statutes is to determine the Legislature's intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In doing so, we must begin with the words of the statute itself. (*Ibid.*) If the language is unambiguous, there is no call for further "construction." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Once we have determined the Legislature's intent with respect to

---

[4]Both parties seem to assume these facilities come within section 727, perhaps as a residual category. Since the question of custody credits for these facilities was never raised in the juvenile court, their exact nature is not a matter of record. The minor cites extensively to facts derived from the report of a select committee of the state Senate. They are unsuitable for judicial notice. It will be sufficient for our purposes to accept that these are section 727 facilities.

policy, it is not our place to substitute a policy we find preferable. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 769 [280 Cal.Rptr. 745, 809 P.2d 404].) The choice of policy by the Legislature is constrained only by constitutional considerations. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 851 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

### A

■ On the question of a minor's entitlement to custody credit for an earlier physical confinement, the Supreme Court addressed the issue in *In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549]. Recognizing a split of authority in the Court of Appeal with respect to whether Penal Code section 2900.5 applied to minors directly or as a matter of equal protection of the law, the court failed to resolve the question. (25 Cal.3d at pp. 533-535.) Instead, it agreed with the approach taken by another Court of Appeal case.[5] (*Id.* at pp. 535-536.) Under section 726, there is no mention of custody credits,[6] but the statute does state that a minor's maximum term of *physical confinement* cannot exceed " 'the maximum term of imprisonment which could be imposed upon an adult convicted' of the offense[ ]." Since an adult's term is reduced by credit for preconviction custody, section 726 should be interpreted as entitling a minor to credit for time previously spent in physical confinement when physical confinement is subsequently selected as a disposition. (25 Cal.3d at pp. 535-536.)

Thus, under *In re Eric J., supra*, 25 Cal.3d 522, a minor is entitled to credit for any time spent in physical confinement *not* through direct application of Penal Code section 2900.5 or via equal protection concepts but as an interpretation of legislative intent behind the expression "maximum term of imprisonment which could be imposed upon an adult" in section 726 *where the statute is otherwise silent* on the question of custody credits. ■ Moreover, it is important to bear in mind that the entitlement to custody credits authorized by *Eric J.* actually involved physical confinement as defined by section 726, because the ratio decidendi of a case is determined by the facts before the court rendering the decision. (*Sacramento County Deputy Sheriffs' Assn. v. County of Sacramento* (1990) 220 Cal.App.3d 280, 288 [269 Cal.Rptr. 6].) ■ *Eric J.* consequently offers no instruction on what constitutes physical confinement.

The minor acknowledges that the Supreme Court subsequently described the direct applicability of Penal Code section 2900.5 to minors as a "subject

---

[5]*In re Harm. R., supra*, 88 Cal.App.3d at page 445.

[6]In contrast, the statute expressly states the calculation of the adult maximum period of confinement should not include any conduct credits.

of some uncertainty." (*In re Ricky H.* (1981) 30 Cal.3d 176, 186 [178 Cal.Rptr. 324, 636 P.2d 13].) He nonetheless makes mention of *In re Eugene R.* (1980) 107 Cal.App.3d 605 [178 Cal.Rptr. 324, 636 P.2d 13] as authority for the direct application of Penal Code section 2900.5 to minors.[7] *Eugene R.* does not so hold; it merely quotes *In re Eric J.*, *supra*, 25 Cal.3d 522, which—as we have already discussed at length—does *not* apply the statute to minors. Moreover, *Eugene R.*'s conclusion—that minors are entitled to conduct credits—was gainsaid by *Ricky H.* on the bases that section 726 specifically precluded such credits and minors were not similarly situated with adults for purposes of equal protection. (30 Cal.3d at pp. 187-190.) In the absence of governing Supreme Court precedent to the contrary, we adhere to the line of authority finding the adult statute does not directly apply to minors. (*In re Michael W.* (1980) 102 Cal.App.3d 946, 954 [162 Cal.Rptr. 744]; *In re Leonard R.* (1977) 76 Cal.App.3d 100, 103-105 [142 Cal.Rptr. 632].) The minor also urges the principles of Penal Code section 2900.5 should be incorporated in section 726. He relies on the part of *Ricky H.* which held that the "attributable to" limitation on adult conduct credit contained in Penal Code section 2900.5, subdivision (b) (under which adults receive custody credit only for earlier custody attributable to the same conduct of which they are subsequently convicted), meant a minor was entitled to credit under section 726 only for physical confinement "attributable to" the same conduct underlying the ultimate dispositional order. (30 Cal.3d at p. 185.) This holding, however, is not authority for wholesale incorporation of Penal Code section 2900.5 into section 726; it is simply another interpretation of the expression "maximum period of confinement which could be imposed upon an adult" in a context *not otherwise addressed* by section 726.

Thus governing authority entitles minors to custody credits solely as a matter of interpretation of section 726. We must now examine the types of facilities in which a minor may earn custody credit pursuant to section 726.

B

 As a matter of statutory analysis, the minor's claim of entitlement to credit for time spent on home arrest, at Pride House, and in the Rite of

---

[7]He also cites our decision of *In re John H.* (1992) 3 Cal.App.4th 1109, 1111 [6 Cal.Rptr.2d 25], in which we included a citation to Penal Code section 2900.5 along with one to *In re Eric J.*, *supra*, 25 Cal.3d 522. That decision, however, was limited to the issue of the juvenile court's failure to calculate the minor's custody credit and in no way involved the question of the applicability of the adult statute to minors. Cases are not authority for propositions not explicitly considered.

Passage program quickly falls in light of our elucidation of the nature of the entitlement to custody credit. Under *In re Eric. J.*, *supra*, 25 Cal.3d 522, he is entitled to credit against subsequent *physical confinement* only for earlier *physical confinement*. Section 726 specifically defines "physical confinement" as excluding time not spent in a secure facility. (*In re Harm R.*, *supra*, 88 Cal.App.3d at p. 442; *In re Mikeal D.* (1983) 141 Cal.App.3d 710, 720-721 [190 Cal.Rptr. 602].) This is therefore an entirely different situation from the cases discussed in the previous section which involved issues on which the statute was silent. We are not empowered to ignore this clear and unambiguous definition absent some constitutional shortcoming. Since none of the facilities for which he seeks credit were "secure," he is not entitled to credit.

Although the minor points to a number of amendments to other statutes, none of these change the pertinent language of section 726 and are therefore irrelevant. Similarly irrelevant is the Legislature's failure to provide explicitly in the section 726 definition for any time spent in county jail. In *In re Mikeal D.*, *supra*, 141 Cal.App.3d 710 the court held a jailed minor was entitled to custody credits notwithstanding the failure to include jail in the list of facilities in section 726 because "there is hardly anything more physically confining than jail." (141 Cal.App.3d at p. 721.) Whether or not we agree with this analysis (which is limited to what we have quoted), the result is defensible as filling another legislative gap (which perhaps is the result of the fact jail is not ordinarily a disposition for minors and thus would not have been contemplated when drafting the statute). By contrast, the Legislature specifically *included* language limiting the definition of physical confinement to *secure* juvenile-home placements pursuant to section 730; had the Legislature meant to include all juvenile placements for section 602 wards pursuant to section 730, including the section 727 nonsecure-placement option made available by section 730, it would not have used the restrictive language that we are not free to disregard. Of no more succor is the minor's citation of *In re Michael D.* (1989) 214 Cal.App.3d 1610 [264 Cal.Rptr. 476]. While it is true that in one sentence the court describes home confinement time as custody time (*id.* at p. 1613), this was not the issue before the court;[8] again, we remind the minor that cases are not authority for propositions not explicitly considered. The final case on which the minor relies is *In re Debra S.* (1982) 135 Cal.App.3d 378 [185 Cal.Rptr. 219]. Debra had argued she was entitled to custody credit for time spent on probation, relying on the judicial interpretation given Penal Code

---

[8]The court concluded that a minor's failure to remain at home under a home confinement program was not within the ambit of the "escape" statute (§ 871). (214 Cal.App.3d at pp. 1614-1615.)

section 2900.5[9] under which "custody" was not limited to incarceration and instead included any restraints not shared by the public generally. (135 Cal.App.3d at p. 385.) Simply responding to the minor's argument without analysis of the relevance of Penal Code section 2900.5, the court found she was not subjected to any significant restraint while on probation not generally shared by the public. (135 Cal.App.3d at p. 386.) We therefore do not find *Debra S.* persuasive in light of its failure to account for the specific definition of physical confinement contained in section 726.

We therefore find ourselves in accord with *In re Harm R.*, *supra*, 88 Cal.App.3d 438. The plain language of section 726 does not include nonsecure placements, so the minor is not entitled to credit for home custody or the placements at Pride House and Rite of Passage.

## III

■ This leaves the minor's equal protection argument. As he views it, "[w]ithin the class of wards removed from their parents' custody, there are two classes, those committed to government[-]operated juvenile facilities and those committed to other facilities. Under current state law, those committed to government[-]operated juvenile facilities or jails are entitled to have their time served credited against their maximum period of imprisonment [*sic*]. In contrast, wards committed by the court to privately[-]operated juvenile facilities, no matter how similar they may be to government[-]operated juvenile facilities, are not entitled to such credit."

■ The prerequisite to any meritorious claim under the doctrine of equal protection of the laws is a showing that the state has adopted a classification that affects two or more similarly situated groups. (*In re Eric J.*, *supra*, 25 Cal.3d at p. 530.) ■ The problem with the minor's argument is that he has cast a false dichotomy. Section 726 does not draw a distinction between institutions operated by the government and those operated privately. Although *In re Harm R.*, *supra*, 88 Cal.App.3d 438 made reference to a public/private dichotomy in rejecting an equal protection challenge to section 726's distinction between section 727 and section 730 placements (88 Cal.App.3d at pp. 443-445), the key to the analysis focuses on a *secure/nonsecure* distinction (which actually reflects the words of section 726): "In theory, at least, commitments under section 727 are to private foster homes . . . . Commitments under section 730 are to governmentally operated institutions *which, theoretically at least, may be* _locked_ *institutions* . . . ."

---

[9]This doctrine is developed in *People* v. *Rodgers* (1978) 79 Cal.App.3d 26, 31-32 [144 Cal.Rptr. 602], and *People* v. *Reinertson* (1986) 178 Cal.App.3d 320, 326-327 [223 Cal.Rptr. 670].

(88 Cal.App.3d at p. 444 [italics supplied].) The court then noted that section 601 minors could be placed only in "nonsecure, open, foster home placements" and a section 602 minor receiving the benefit of such placement cannot come under section 726. (88 Cal.App.3d at p. 444.) Similarly, in *In re Mikeal D., supra,* 141 Cal.App.3d 710, the court denied custody credit based on the fact the facilities at which the minor stayed were not facilities specified in section 726; the court specifically noted both public and private agencies operated facilities to which section 727 placements could be made. (141 Cal.App.3d at pp. 720-721.)

Thus, properly framed, the distinction drawn by the statute is between section 602 minors placed in nonsecure facilities and section 602 minors placed in facilities that can permissibly be secured. These are not similarly situated categories, and the Legislature consequently is entitled to treat them differently without running afoul of equal protection.

IV\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment (order) is affirmed.

Sparks, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 1994.

---

\*See footnote 1, *ante,* page 1497.