[Civ. No. 51706. Second Dist.. Div. Two. Nov. 18, 1977.]

CHERYL RUCKER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Victor L. Brown and Floyd Zagorsky for Petitioner.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, for Respondent.

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Roderick W. Leonard, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**FLEMING, Acting P. J.**—Petition to mandate the superior court to find petitioner unfit for juvenile court proceedings and certify her for criminal prosecution as an adult.

On 2 April 1977, when she was 17 years, 11 months old, Cheryl Rucker assertedly committed a battery, apparently upon a peace officer. Charged as a minor with violating criminal law (Welf. & Inst. Code, § 602), she was arraigned in juvenile court May 11, nine days after she had reached the age of eighteen, full adulthood under the Civil Code (§§ 25, 25.1). Petitioner avers she is emancipated, living apart from her parents, self-supporting, and the mother of a child of her own. On June 3 she moved for a finding of unfitness for disposition as a juvenile and demanded prosecution as an adult. (Welf. & Inst. Code, §§ 707, 707.1.) The People did not oppose her motion, the referee found petitioner not amenable to juvenile court process, and he ordered the petition dismissed on the filing of adult charges. No probation officer's investigative report or other relevant evidence substantiated the referee's finding, as specified under the statutory procedure. (Welf. & Inst. Code, § 707.)

Thereupon the juvenile court judge on his own motion granted a rehearing, ruled a "minor" lacks authority to move for a declaration of unfitness, found petitioner fit for disposition as a juvenile, and denied her motion for prosecution as an adult. This petition followed.

The issue is whether the circumstances at bench make relinquishment of jurisdiction by the juvenile court appropriate. Under Welfare and Institutions Code section 602 juvenile court jurisdiction is based on age at the time of the *violation* of a criminal law or ordinance. It is therefore possible that a person might commit a murder at age 17, be apprehended 50 years later, and find himself subject to juvenile court jurisdiction at age 67. (Welf. & Inst. Code, §§ 603, 604, 606; see *State* v. *Dehler* (1960) 257 Minn. 549 [102 N.W.2d 696, 89 A.L.R.2d 496].) Under the letter of the law, absent a motion by the People and a probation officer's investigative report, such person could not escape the jurisdiction of the juvenile court.

Yet laws must be given a reasonable construction and harmonized with the general legal scheme of which they form a part. As the court observed in *Holy Trinity Church* v. *United States* (1891) 143 U.S. 457, at page 459 [36 L.Ed. 226 at page 228, 12 S.Ct. 511], "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. . . . frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act. . . . The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted 'that whoever drew blood in the streets should be punished with the utmost severity,' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit."

■ The Juvenile Court Law (Welf. & Inst. Code, §§ 500, 502 *ff.*) is explicitly designed for the benefit of the juvenile, and its provisions must be construed with its principal purpose in mind. (*In re Gault* (1967) 387 U.S. 1, 21, 29 [18 L.Ed.2d 527, 542-543, 547, 87 S.Ct. 1428].) **(2)** If a person who has reached adulthood does not desire to take advantage of the supposedly milder juvenile court process, we think he can waive the benefits of juvenile law and demand that he be dealt with according to

the law of the land. Both legally and factually the right to waive procedural benefits exists. As the most extreme form of waiver, a defendant can plead guilty to the offense charged and thereby waive all the due process components of a criminal trial. (Pen. Code, § 1017, subd. 1.) He may waive his right to jury trial, and he may waive his right to be represented by counsel. (Cal. Const., art. I, § 16; *Singer* v. *United States* (1965) 380 U.S. 24, 34 [13 L.Ed.2d 630, 637-638, 85 S.Ct. 783]; *Adams* v. *U.S.* ex rel. *McCann* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435]; *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) He may waive preliminary formalities, such as extradition (Pen. Code, § 1555.1), preliminary examination (Pen. Code, § 860), *People* v. *Connor* (1964) 229 Cal.App.2d 716, 718 [40 Cal.Rptr. 603]), and reading of indictment (*People* v. *Shack* (1942) 55 Cal.App.2d 16, 19 [130 P.2d 197]). Within certain limits he may waive his right to be present at his trial. (*Diaz* v. *United States* (1912) 223 U.S. 442, 454 [56 L.Ed. 500, 505, 32 S.Ct. 250]; *People* v. *Connolly* (1973) 36 Cal.App.3d 379, 385-386 [111 Cal.Rptr. 409]; see Pen. Code, § 1043.) With the consent of the government he may waive his right to a public trial. (*People* v. *Cash* (1959) 52 Cal.2d 841, 846 [345 P.2d 462]; *People* v. *Tugwell* (1917) 32 Cal.App. 520, 525 [163 P. 508]; *People* v. *Hines* (1964) 61 Cal.2d 164, 172 [37 Cal.Rptr. 622, 390 P.2d 398].) He may waive a jury trial on the issue of insanity (*People* v. *Walker* (1948) 33 Cal.2d 250, 267 [201 P.2d 6]), and he may waive the element of unanimity by consenting to a trial by less than 12 jurors (*People* v. *Clark* (1938) 24 Cal.App.2d 302, 304 [74 P.2d 1070]). Since both statute law and court decisions recognize that juvenile procedure is intended for the benefit of the accused (*People* v. *Olivas* (1976) 17 Cal.3d 236, 256-257 [131 Cal.Rptr. 55, 551 P.2d 375]), it follows that its benefits are waivable by the accused in the same way that procedural rights are waivable in criminal prosecutions. As the court said in *People* v. *Tugwell, supra,* at page 525, "This right [public trial] so accorded by the constitution, like the right to a speedy trial, being for the benefit of the defendant, may be waived by him. 'It is a well-settled maxim that a party may waive the benefit of any condition or provision made in his behalf, no matter in what manner it may have been made or secured.' . . . 'The law will not compel a man to insist upon any benefit or advantage secured to him individually. . . .' " As Justice Frankfurter observed in *Adams* v. *U.S.* ex rel. *McCann* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 275], "What were contrived as protections for the accused should not be turned into fetters."

So here. Where one now an adult wishes to waive the benefits of juvenile court law and answer charges as an adult in a criminal court, we

think such waiver should be honored almost automatically and the cause transferred to the municipal or superior court having jurisdiction under general criminal law. The mechanism for this transfer is at hand in the procedure for the finding of unfitness. (Welf. & Inst. Code, §§ 707, 707.1.) Any other result would impinge on the requirements of due process of law and be contrary to the common sense of mankind, for what possible compelling interest can either the People or the juvenile court have in trying an adult as a juvenile against the adult's own wishes? Indeed, it may be considered axiomatic that when an adult who is within the technical jurisdiction of the juvenile court knowingly demands to be prosecuted as an adult, he "would not be amenable to the care, treatment and training program available through facilities of the juvenile court," for the adult may be said to have made himself unfit for juvenile treatment by choice.

Such an interpretation of the statute avoids constitutional difficulties, for it is hornbook law that when an adult is tried in a manner that deprives him of constitutional guarantees, his conviction must be reversed. Since an adult has a constitutional right to trial by jury and a juvenile does not (*McKeiver* v. *Pennsylvania*, 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976]), the conclusion seems inescapable that an adult petitioner may not be tried as a juvenile over his objection. The Legislature has no power to deprive an adult of basic rights and protections he may intelligently wish to exercise, nor do we believe it ever intended to do so. Rather the Legislature merely failed to anticipate that the benefits of juvenile court procedure would be voluntarily rejected by one eligible to receive them. The implication that such benefits may be rejected, or waived, remains; and we avoid grave constitutional problems by construing juvenile court law in a way that harmonizes it with constitutional rights.

No problem involving exclusive jurisdiction of a particular court exists, because with respect to violations of criminal law committed by persons between the ages of 16 and 18 the juvenile court and the criminal courts have concurrent jurisdiction, with priority lodged in the juvenile court. (Welf. & Inst. Code, §§ 603, 604, 707, 707.1.) Exercise of priority, however, like the exercise of other judicial functions, remains subject to rules governing judicial discretion, and when general constitutional and statutory patterns of law make assertion of priority inappropriate, common sense requires that priority be relinquished. Such a situation arises when a competent adult demands that he be prosecuted as an adult. The demand must be honored. We recognize that petitioner

may have an ulterior motive behind her demand for trial as an adult—that under criminal prosecution she may anticipate a more favorable judge, more technical rulings governing admissibility of evidence, or more sympathetic consideration from a jury as finder of fact that she would receive from a judge of the juvenile court under a charge of assaulting a police officer. Petitioner's motive, however, is immaterial, for the issue involves the propriety of juvenile court relinquishment of jurisdiction to enable petitioner to exercise her right to be prosecuted as an adult. The only factual issue for determination in petitioner's fitness hearing was whether petitioner knowingly, intelligently, and advisedly waived her rights to the benefits of juvenile process. If she properly waived them—and the record indicates she did—then the juvenile court in the exercise of sound discretion was required to certify her for prosecution as an adult.

Let a peremptory writ of mandate issue requiring respondent court to vacate its order of 5 July 1977 denying petitioner's motion and enter a new and different order finding her unfit for juvenile process and authorizing her prosecution under general criminal law.

Compton, J., and Beach, J., concurred.

The petition of the respondent and the real party in interest for a hearing by the Supreme Court was denied January 26, 1978. Clark, J., was of the opinion that the petition should be granted.