[No. F008747. Fifth Dist. July 6, 1988.]

In re RODNEY F., a Person Coming Under the Juvenile Court Law. THE PEOPLE, Plaintiff and Respondent, v. RODNEY F., Defendant and Appellant.

178

**COUNSEL**

Frieda Jo Owings, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BALLANTYNE, J.—**

### FACTS AND PROCEEDINGS BELOW

On November 20, 1986, between 6 and 8 p.m., Russell Mitchum heard sounds of an altercation outside of his apartment. He had his female com-

panion telephone the apartment manager and the police as he went next door to investigate. A confrontation ensued between Mitchum and a group of young men. The defendant, Rodney F., was holding a short piece of pipe in his hand. As Mitchum turned to leave he was attacked by the defendant and three other young men. He was struck on the head with a pipe or a metal bar. Because of the darkness he was uncertain which of the young men struck him. The blow dazed him but he was able to grab his assailant. The other men joined in the assault with broomsticks or mop handles hitting him on the head and body and forcing him to the ground where he was pummeled with their fists and feet. The victim sustained serious injuries to his head and kidneys.

At the time of the incident Rodney was 17 years 10 months and 20 days old.

On November 24, 1986, a petition was filed in the Fresno County Superior Court, sitting as a juvenile court, alleging that Rodney was a person coming within the provisions of Welfare and Institutions Code [1] section 602 in that he had committed assault by means of force likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (a)(1). On November 25, 1986, Rodney was arraigned and denied the allegations. Because of continuances, the jurisdictional hearing was not held until March 31, 1987, and Rodney was 18 years and 3 months old. The court found the allegations of the petition to be true.

On May 13, 1987, Rodney was committed to the California Youth Authority (CYA) for the maximum confinement time of four years. On May 27, 1987, a supplemental order was filed modifying the previous order by making a finding that defendant was a person described by section 602 by reason of his violation of an offense listed in section 707, subdivision (b)(14).

On appeal defendant contends that as an adult he had a right to demand a jury trial and the court committed per se error in failing to advise of the right and to obtain an express waiver. Furthermore, this failure by the court violated defendant's rights to equal protection. Finally, he was deprived of his constitutional right to be present and represented by counsel when the court made its supplemental CYA commitment order. For the reasons discussed below we find these contentions to be without merit. We will affirm the judgment.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## DISCUSSION

### I.

### RIGHT TO DEMAND TREATMENT AS AN ADULT

 Defendant first argues that because he was an adult at the time of his arraignment, he had the right to demand treatment as an adult rather than treatment as a juvenile. As a result, the court erred prejudicially in failing to inform him of this right (which would include the right to trial by jury). The error was compounded, the argument goes, by the court's subsequent failure to then obtain an express waiver by defendant of his right to trial by jury prior to proceeding with the juvenile court trial. The cornerstone of defendant's arguments in this issue is his belief that he had the "right" to demand to be tried as an adult or request to waive the benefits of the juvenile court. If no such right exists, and the court was under no other duty to inform him that he may request to be tried as an adult, then the argument an express waiver was necessary simply evaporates.

Section 602 provides: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

As previously noted, defendant was nearly 17 years and 11 months old when the offense was committed. Due to a number of continuances, he was well over 18 years of age when the juvenile court trial began.

Defendant relies heavily upon *Rucker* v. *Superior Court* (1977) 75 Cal.App.3d 197 [141 Cal.Rptr. 900]. Cheryl Rucker was nearly 18 years old when she purportedly committed a battery upon a peace officer. Like defendant in the present case, she was charged as a minor but not arraigned until after she had reached 18 years of age, or adulthood. (See Civ. Code, §§ 25 & 25.1.) However, unlike the defendant in the present case, she moved for a finding of unfitness for disposition as a juvenile. (See §§ 707 & 707.1.) The motion went unopposed by the prosecution. The defendant in *Rucker* was then found not amenable to the juvenile court process. The referee ordered the petition dismissed upon the filing of adult charges. No investigative report was filed by the probation officer, and apparently there was no other relevant evidence substantiating the finding of the referee, as required. (See § 707.)

The juvenile court judge, on his own motion, granted a rehearing in which the court ruled the minor lacked authority to move for a declaration

of unfitness. The defendant was then found to be fit for disposition as a juvenile and her motion for adult prosecution was denied. (*Rucker* v. *Superior Court, supra,* 75 Cal.App.3d at pp. 199-200.)

The appellate court reversed, reasoning that when an individual has reached adulthood and does not wish to take advantage of the benefits offered by the juvenile court process, he is entitled to waive those benefits and demand treatment as an adult. (75 Cal.App.3d at pp. 200-201.) ▆▆▆ The court was also of the opinion that where such an adult desires to waive these benefits and answer charges as an adult, honoring the waiver should be *practically* automatic. (*Id.* at pp. 201-202.) Later in the opinion, the court went so far as to say the demand *must* be honored. (*Id.* at p. 202.) The court concluded the only factual issue was whether the waiver was knowingly and intelligently made, etc. (*Id.* at p. 203.)

The court was of the opinion that any other result would violate due process, and indeed, common sense. No compelling interest could be found for trying an adult, against his own wishes, as a juvenile. (75 Cal.App.3d at p. 202.) The court was also of the opinion that its interpretation of sections 707 and 707.1 avoided difficulties in the constitutional law area. The constitutional example the court mentioned was an adult's right to a jury trial—a right which the Legislature may not take away. (*Ibid.*)

▆▆▆ Defendant acknowledges the fact the major difference between his case and *Rucker* is his failure to move for a finding of unfitness under section 707 and to demand to be tried as an adult. He nevertheless argues his failure does not constitute a waiver of his right to be tried as an adult.

Defendant's argument turns the *Rucker* decision on its head. In *Rucker,* the defendant was waiving the *right* to be tried as a juvenile, not exercising a right to be tried as an adult. Had the defendant in *Rucker* made no such motion, no waiver or attempted waiver of the benefits of a juvenile court trial would have taken place. Hence, the failure to make a motion for a declaration of unfitness (thereby waiving the benefits of the juvenile court law) is not tantamount to a waiver of rights available in adult court. Instead, it is merely a failure to move for waiver of treatment as a juvenile. Therefore, the failure to make such a motion is dispositive, and the issue must be considered to have been waived. Any different result would allow a defendant two bites of the apple: play wait-and-see as to what the juvenile court would do, and if the outcome was not acceptable, claim waiver of the juvenile court process and demand the right to trial as an adult. In this regard, it seems extremely significant that defendant is not arguing ineffective assistance of counsel due to counsel's failure to fully advise him

of his choices. It seems clear a tactical decision was made to remain in the juvenile court process.

Such a result is consistent with the *Rucker* approach, which required that the waiver of the juvenile court proceeding be made knowingly and intelligently. In other words, treatment as an adult in such a situation is not absolute. The *Rucker* court stated that where the petitioner knowingly, intelligently, and advisedly waives the rights to the juvenile process benefits, the court is required to certify the defendant for adult prosecution because the exercise of sound discretion provides for no other result. Nevertheless, the *Rucker* court left open the possibility that sound discretion would reach the opposite result in a case where the defendant was incapable of a knowing and intelligent waiver, despite the fact the defendant was over 18 years of age when the motion was made, but was a juvenile when the alleged crime was committed.

It is also arguable the *Rucker* language goes too far, inasmuch as the case can be read to mean that where a fitness motion of this type is made, granting the motion should be virtually automatic. Section 707 anticipates a fitness determination to be made by the court through exercise of its discretion, rather than by one or both of the parties involved. Section 707 provides, in pertinent part: "(b) The provisions of subdivision (c) shall be applicable in any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of one of the following offenses:

". . . . . . . . . . . . . . . . . . . .

"(14) Assault by any means of force likely to produce great bodily injury.

". . . . . . . . . . . . . . . . . . . .

"(c) With regard to a minor alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any of the offenses listed in subdivision (b), *upon motion of the petitioner made prior to the attachment of jeopardy* the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law *unless the juvenile court concludes, based upon evidence, which evidence may be of extenuating or mitigating circumstances, that the minor would be amenable to the care, treatment, and*

*training program available through the facilities of the juvenile court based upon an evaluation of each of the following criteria*:

"(1) The degree of criminal sophistication exhibited by the minor.

"(2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.

"(3) The minor's previous delinquent history.

"(4) Success of previous attempts by the juvenile court to rehabilitate the minor.

"(5) The circumstances and gravity of the offenses alleged to have been committed by the minor.

"A determination that the minor is a fit and proper subject to be dealt with under the juvenile court law shall be based on a finding of amenability after consideration of the criteria set forth above, and findings therefor recited in the order as to each of the above criteria that the minor is fit and proper under each and every one of the above criteria. In making a finding of fitness, the court may consider extenuating or mitigating circumstances in evaluating each of the above criteria. In any case in which a hearing has been noticed pursuant to this section, the court shall postpone the taking of a plea to the petition until the conclusion of the fitness hearing and no plea which may already have been entered shall constitute evidence at the hearing." (Italics added.)

In the case of *In re Anna S.* (1979) 99 Cal.App.3d 869 [160 Cal.Rptr. 495], this court held the juvenile court was not required to accept a 16-year-old defendant's waiver of her right to be treated as a juvenile so that she could obtain a trial by jury in the criminal court. Relying upon *Rucker,* the defendant argued the only requirement was that her waiver be made intelligently, and that she was adequately informed of the consequences of the waiver. She did not allege she was actually unfit for treatment as a juvenile. (*Id.* at p. 871.)

We read section 707 as meaning the party which could cause the probation officer to investigate and submit a report to the court to be the prosecuting attorney. The section refers to this party as the petitioner. (*In re Anna S., supra,* 99 Cal.App.3d at pp. 871-872; see § 707, subd. (c), quoted earlier and italics added.) The minor may provide the court with other relevant evidence after the report has been submitted and considered by the court. (*Id.* at p. 872) We distinguished *Rucker,* noting that in the *Rucker*

case, the accused was no longer a minor at the time the court was presented with the waiver. (*Ibid.*) We further distinguished *Green* v. *Municipal Court* (1976) 67 Cal.App.3d 794, 802, footnote 7, 804, footnote 9 [136 Cal.Rptr. 710], by noting the holding in *Green* was that the juvenile court, upon its own motion, may initiate a fitness hearing. (99 Cal.App.3d at p. 872, fn. 1.) Finally, we observed that unlike *Rucker,* where the court *may* have no compelling interest in forcing an adult to be tried as a juvenile against his or her wishes, a compelling interest does exist where the accused is still a juvenile at the time the waiver is attempted: the interest being that the state desires to see that all juveniles who are amenable to juvenile court law treatment will be treated as juveniles. (*Id.* at p. 872.)

We concluded our discussion in this area by stating that section 707 was intended to provide a procedure by which the judge could exercise discretion, based upon enumerated factors, in determining fitness for treatment under the juvenile court law. (99 Cal.App.3d at pp. 872-873.)

In *In re Mikeal D.* (1983) 141 Cal.App.3d 710 [190 Cal.Rptr. 602], the court was presented with an issue it phrased as follows: "(1) Did the juvenile court have jurisdiction to modify a previous order of wardship based upon acts committed after appellant was over 18 years of age, and for which he had been tried and sentenced as an adult?" (*Id.* at p. 713.)

The court concluded, after a lengthy discussion, that the juvenile court had not relinquished jurisdiction over the defendant because no finding of unfitness was requested or made. Apparently the probation department did not bring a supplemental petition until after the defendant's jail sentence on other charges had been served. (141 Cal.App.3d at pp. 714, 717.) The supplemental petition alleged the defendant violated his juvenile court probation when he was convicted of other crimes in municipal court. (*Id.* at p. 717.) Hence the jurisdiction question. Of significance to the present case is the following quote, arguably dicta, in the *Mikeal* jurisdictional analysis: "Appellant argues that since he could have asked for and almost automatically received a finding of unfitness solely on account of his age (*Rucker* v. *Superior Court* (1977) 75 Cal.App.3d 197 [141 Cal.Rptr. 900]), the lack of such finding here is insignificant. The practical effect of appellant's suggestion would be to extend *Rucker* to the point where a fitness hearing (Welf. & Inst. Code, § 707) would be unnecessary for any ward over the age of eighteen who found himself in adult court. Since this would require a change in existing statutory law, appellant's argument would be better directed to the Legislature." (*Id.* at p. 717.)

Defendant's contention in the present case likewise extends the *Rucker* opinion too far and is better addressed by the Legislature.

■ In conclusion, defendant's argument on this issue is incorrectly premised upon his assumption that he had the "right" to have a waiver of his right to be subject to the benefits of the juvenile court honored and thereby receive treatment as an adult. As the preceding analysis demonstrates, defendant had no such absolute right because the court retains discretion in such cases. Moreover, defendant has waived his right to appeal from the court's exercise of discretion on this issue by failure to raise it below. ■ Finally, what defendant possessed was the right to waive the benefits of the juvenile court process, not a right to demand a jury trial. The right to jury trial would then arise after a finding of unfitness and acceptance of the waiver. (See *In re Mitchell P.* (1978) 22 Cal.3d 946, 952-953 [151 Cal.Rptr. 330, 587 P.2d 1144].)

As a result, no error occurred by the court's failure to advise defendant of his right to a jury trial or in the court's failure to obtain an express waiver of the right to a jury trial.

## II.

### FAILURE TO ADVISE DEFENDANT OF HIS RIGHT TO BE TRIED AS AN ADULT.

Defendant next argues he was denied his right to equal protection by the court when it failed to advise him of his right to be tried as an adult. He provides a number of arguments illustrating the different treatment he would have received in adult criminal court, as opposed to juvenile court: jury trial, possible instructions on the lesser-included offense of misdemeanor assault, sentence credits, etc. Again, this argument is incorrectly premised upon defendant's assumption *Rucker, supra,* 75 Cal.App.3d 197 is to be read in a way which turns defendant's right to request a waiver of the benefits of the juvenile court process, or a finding of unfitness, into an absolute right to be tried as an adult.

First, as previously discussed and concluded, no such absolute right exists. Second, defendant has failed to show he is similarly situated to other adults or been treated differently while under like circumstances. (See *In re Anna S., supra,* 99 Cal.App.3d at p. 873; *In re Mitchell P., supra,* 22 Cal.3d 946, 952-953 [equal protection not offended where juveniles do not receive jury trials].)

As for being convicted of a misdemeanor instead of a felony, this argument is sheer speculation because defendant could have been convicted of a misdemeanor by the juvenile court had the facts warranted it. As for sentencing, he argues he may have been sentenced to the lower or middle term

in adult court, but that in juvenile court only the upper term is used to compute maximum confinement time. However, it has been found that the different sentencing schemes do not violate equal protection. In addition, defendant again speculates on what sentence he might have received if tried as an adult. (See *In re Eric J.* (1979) 25 Cal.3d 522, 528-533 [159 Cal.Rptr. 317, 601 P.2d 549].)

III.

### Right to Be Present and Represented by Counsel

Defendant last argues he was denied his constitutional right to be present and represented by counsel when the court made its supplemental finding and order of commitment to CYA. As noted earlier, the initial order was filed on May 13, 1987. A supplemental CYA commitment order was filed on May 27. The commitment order is a form which provides space for the court to fill in the necessary information, including the checking, where applicable, of up to 10 boxes under the heading "Preliminary Findings and Orders" and 8 boxes under the heading "Judgment." In the supplemental order, the only box the court checked was No. 10 under "Preliminary Findings and Orders," which provides: "10 _x_ The minor is found to be a person described by Section 602 of the W&I Code by reason of a violation of an offense which is listed in subsection (b) of Section 707[.] If listed, it is described in subdivision #14 of 707(b)."

Section 707, subdivision (b)(14), as quoted above, states: "(b) The provisions of subdivision (c) shall be applicable in any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of one of the following offenses:

". . . . . . . . . . . . . . . . . . . . .

"(14) Assault by any means of force likely to produce great bodily injury."

Defendant was charged and convicted of assault by means of force likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (a)(1). The allegations in the petition were found to be true by the court on April 1, 1987.

It appears that the omission of the section 707, subdivision (b), finding from the first commitment order was a clerical error. A section 707, subdivision (b), finding is mandatory if the court intends the defendant to be exposed to the maximum period of confinement in CYA. Where the defend-

ant is committed to CYA for having been convicted of committing a crime not listed in section 707, subdivision (b), he is discharged after two years, or when he reaches twenty-one years of age. (See § 1769, subd. (a).) However, where the defendant is committed to CYA after being convicted of having committed a crime listed in section 707, subdivision (b), his discharge does not come until after two years or after he reaches his twenty-fifth birthday. (§ 1769, subd. (b).)

The commitment order must specify if the offense for which the defendant is convicted is listed in section 707, subdivision (b). (See Cal. Rules of Court, rule 1373(c).) █ Clearly, the rule is designed to protect defendants so that the determination of the defendant's exposure to the potentially harsher term is decided by the court, rather than by the penal authorities. (See 65 Ops.Cal.Atty.Gen. 359, 362 (1982); see also Judicial Council of Cal., Ann. Rep. (1984) p. 85, noting the amendment to rule 1373 was intended to incorporate the requirement that commitments specify if the offense is listed in § 707, subd. (b).) █ Because the finding was mandatory, we conclude that its omission was a clerical error, the correction of which did not require the presence of the defendant or his attorney. (See *In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 47 P.2d 729].)

In *Candelario,* it was held that where the amendment does not modify the original judgment substantially, or alter the rights of the parties materially, it can be considered clerical error. However, it should be noted that the record must demonstrate, clearly, that the error did not result from the exercise of judicial discretion. It appears that no discretion was present here, inasmuch as defendant had been found guilty of having committed the violation of a Penal Code section which is virtually identical in definition to that provided in section 707, subdivision (b)(14). This ground for appeal is rejected.

The judgment is affirmed.

Martin, Acting P. J., and Pettitt, J.,* concurred.

---

* Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.