[No. D016229. Fourth Dist., Div. One. June 30, 1992.]

JOEY W., a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Francis J. Bardsley, Public Defender, Philip W. Harry, Assistant Public Defender, Bill Boyland, Chief Deputy Public Defender, Susan M. Gaskins, Jeffrey Reilly and Kathryn Watson, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Richard J. Neely, Assistant District Attorney, Brian E. Michaels, Chief Deputy District Attorney, and Anthony Lovett, Deputy District Attorney, for Real Party in Interest.

## Opinion

WIENER, Acting P. J.—Petitioner, Joey W. (Joey), seeks a writ of mandate after he unsuccessfully moved under *Rucker* v. *Superior Court* (1977) 75 Cal.App.3d 197 [141 Cal.Rptr. 900] (*Rucker*) to be determined unfit for disposition in juvenile court for crimes allegedly committed when he was 17 years of age but which were to be tried after his 18th birthday. The offenses allegedly occurred after Joey escaped from the Juvenile Ranch Facility where he had been committed by the juvenile court pursuant to Welfare and Institutions Code[1] section 602 proceedings. Joey's request is predicated on his conclusion he has an absolute right to be determined unfit for juvenile disposition under section 707[2] solely because of his age. We conclude no such absolute right exists and the juvenile court retains discretion to determine whether the individual is fit for juvenile process pursuant to the criteria

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]Section 707 provides in pertinent part:

"(a)  In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any criminal statute or ordinance except those listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit, the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based on an evaluation of the following criteria:

"(1)  The degree of criminal sophistication exhibited by the minor.

"(2)  Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.

"(3)  The minor's previous delinquent history.

"(4)  Success of previous attempts by the juvenile court to rehabilitate the minor.

"(5)  The circumstances and gravity of the offense alleged to have been committed by the minor."

set forth in section 707. However, because this record does not show whether the court properly exercised its discretion, we remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Joey has a long history within the juvenile court. At 15 he was first declared a ward for possessing stolen property. Later that year, November 1989, he was continued as a ward based on a true finding of burglary. Again in January 1990 Joey was continued as a ward on charges of possessing stolen property and attempted petty theft. He was placed in a 24-hour school. In February 1991 he was charged with escaping from the school and violating probation for leaving his court-ordered placement without permission. The court found he violated probation, dismissed the remaining charge and placed Joey with his mother. Then in July 1991 the juvenile court committed Joey, then 17 years old, to the Juvenile Ranch Facility after it found he possessed methamphetamine.

The next month Joey escaped from the ranch. Soon apprehended, he promptly escaped again. A warrant issued for his arrest. A section 602 petition was filed alleging escape. On October 18, 1991, while Joey was still 17 years old, authorities attempted to arrest him. The altercation that ensued resulted in assault and resisting arrest allegations being added to the section 602 petition.

Joey made at least five appearances in the juvenile court in October, November, and December 1991 for his detention hearing and several readiness hearings that were continued. The matter was eventually set for a jurisdictional hearing on December 26, 1991. On Joey's motion the hearing was continued to January 21, 1992. On that date, three days after his eighteenth birthday, Joey filed a *Rucker* motion requesting the court find him unfit for disposition in the juvenile court under section 707 and to transfer jurisdiction to adult court. The motion was based solely on his having attained majority.

In denying the motion the court reasoned Joey's escape from the ranch was an outgrowth of the section 602 petition for possessing methamphetamine and not a new violation. The court apparently believed it retained jurisdiction under the original petition. It is not clear whether the court considered the criteria listed in section 707 in making its decision. This proceeding ensued.

## DISCUSSION

### I

■ The principal issue presented is whether the juvenile court retained discretion to deny Joey's motion to be declared unfit for juvenile disposition. Joey says that upon attaining majority and "knowingly, intelligently and advisedly" waiving his rights to the benefits of juvenile process, the court was required to certify him for prosecution as an adult. The People respond by explaining that in light of the existing wardship relationship between Joey and the juvenile court, the court can exercise its discretion and not allow Joey to unilaterally terminate their relationship.

Joey relies exclusively on *Rucker*. In *Rucker*, the minor, was alleged to have committed a battery on a peace officer shortly before her 18th birthday. She was charged as a minor but was not arraigned until she was 18. She moved for a finding of unfitness, demanding prosecution as an adult under sections 707 and 707.1. (*Rucker, supra,* 75 Cal.App.3d at p. 199.) She stated she was emancipated, living apart from her parents, self-supporting, and a mother. The juvenile court denied the motion, ruling a minor lacked authority to move for a declaration of unfitness and found Rucker fit for disposition as a juvenile. Rucker petitioned for mandate.

The appellate court granted the petition, reasoning an individual who attains majority and does not want to take advantage of the benefits of the juvenile justice process may waive the benefits of that system and demand treatment as an adult. (75 Cal.App.3d at pp. 200-202.) "Where one now an adult wishes to waive the benefits of juvenile court law and answer charges as an adult in a criminal court, we think such waiver should be honored almost automatically and the cause transferred to the municipal or superior court having jurisdiction under general criminal law." (*Id.* at pp. 201-202.) "The demand must be honored [when a competent adult demands to be prosecuted as an adult.]" (*Id.* at p. 202.)

*Rucker* concluded "[t]he only factual issue for determination in petitioner's fitness hearing was whether petitioner knowingly, intelligently, and advisedly waived her rights to the benefits of juvenile process. If she properly waived them . . . then the juvenile court in the exercise of sound discretion was required to certify her for prosecution as an adult." (75 Cal.App.3d at p. 203.)

*Rucker*'s reasoning has not gone unchallenged. *In re Rodney F.* (1988) 203 Cal.App.3d 177 [249 Cal.Rptr. 424], questioned *Rucker*'s categorical statement that upon reaching majority the minor-now-adult had an absolute right

to terminate the jurisdiction of the juvenile court in favor of the adult court. *Rodney F.*'s section 602 petition alleged the minor, almost 17 years and 11 months old, had committed assault by means of force likely to produce great bodily injury. Due to continuances, the jurisdictional hearing was held after the minor's 18th birthday. The court found the petition's allegations were true and committed him to the California Youth Authority. On appeal, relying on *Rucker*, Rodney argued that as an adult he had a right to a jury trial and the court had prejudicially erred by failing to so advise him and obtaining his express waiver. (203 Cal.App.3d at p. 180.) The appellate court disagreed. In doing so it questioned *Rucker*'s "arguable" position that where an adult makes a fitness motion its granting should be "virtually automatic." (*Id.* at p. 183.) The court opined section 707 anticipates the juvenile court will make a fitness determination through exercise of its discretion on the basis of section 707, subdivision (a)'s criteria. The court concluded an adult who is subject to a section 602 petition has no " 'right' to have a waiver of his right to be subject to the benefits of the juvenile court honored and thereby receive treatment as an adult." (203 Cal.App.3d at pp. 183-186.) No such absolute right exists because the court retains discretion. (*Id.* at p. 186.)

## II

We are persuaded by the foregoing statements in *In re Rodney F.*, *supra*, 203 Cal.App.3d 177. The juvenile law's statutory scheme supports the conclusion the juvenile court retains discretion to deny an adult's motion for determination of unfitness. Under section 602 any person who is under the age of 18 when he or she commits a criminal offense is within the jurisdiction of the juvenile court. Once an individual is adjudged a ward of the juvenile court that court may retain jurisdiction over the ward until he or she attains the age of 21 or 25 depending upon the nature of the offense. (§ 607.)

When an individual is charged with having committed an offense as a minor, no court other than the juvenile court may conduct a preliminary hearing or trial unless the case has proceeded through the juvenile court and the juvenile court has ordered the person be prosecuted under the general law. (§ 603.) Section 604, subdivision (a), provides that when a case is before a court other than the juvenile court and it appears the person charged was not yet 18 at the time of the offense, the court must suspend all proceedings, inquire into the age of the person, and if it appears the person was in fact not 18, certify the matter to the juvenile court. Once an individual is certified to the juvenile court all other courts lose jurisdiction unless the juvenile court finds the individual is not a "fit subject for consideration under the juvenile court law and has ordered that proceedings under the general law resume or be commenced." (§ 604, subd. (b).) Finally, section

606 provides that when a petition is filed in the juvenile court, the person subject to the petition cannot be subject to criminal prosecution for the same offense unless the juvenile court finds the individual is not fit for juvenile process and orders criminal proceedings be resumed or instituted.

## III

The mechanism for finding a minor unfit for treatment as a juvenile is found in section 707. Upon a declaration of unfitness pursuant to section 707, section 707.1 provides the means to transfer the minor to a court of criminal jurisdiction. Section 707, subdivision (a), provides that in any proceeding in which the minor was 16 years of age or more at the time of an alleged violation of a criminal statute, the "petitioner" may move to have the minor determined unfit. The motion must be made before the attachment of jeopardy. The statute requires the probation officer to investigate and to submit a report on the minor's behavioral patterns and social history. The court then considers the report and any other relevant evidence submitted by the "petitioner" or the minor and evaluates, on the basis of five criteria, whether the minor is not amenable to the care, treatment, and training of the juvenile system.[3] The five criteria are criminal sophistication exhibited, previous delinquent history, success of previous attempts at rehabilitation, circumstances and gravity of the offense alleged and whether the minor can be rehabilitated before the juvenile court's jurisdiction expires. The court is given discretion and its determination may be based on any one or a combination of the criteria. (§ 707, subd. (a); *In re Rodney F.*, *supra*, 203 Cal.App.3d at p. 183.)

Since the court may consider additional evidence submitted by the "minor" or the "petitioner," it is clear the statute contemplates the "petitioner" will be the People. *Rucker*, *supra*, 75 Cal.App.3d 197 and the present case, where the person subject to the section 602 petition is seeking a determination of unfitness and transfer to the adult court, do not fit neatly within section 707. However, section 707 is the only means to effect a transfer from juvenile court to adult court. The *Rucker* court therefore utilized the legal fiction that an adult who is within the "technical" jurisdiction of the juvenile court may by choice make himself unfit for juvenile treatment by knowingly demanding to be treated as an adult. (*Rucker*, *supra*, 75 Cal.App.3d at p. 202.)

---

[3]For certain generally violent offenses listed in section 707, subdivision (b), subdivision (c) provides the minor is presumed to be not fit for juvenile process unless the court concludes he or she is amenable to the care, treatment, and training of the juvenile system based on the same five criteria. The offenses alleged against Joey are not included in subdivision (b).

## IV

■ We agree with *Rucker* that section 707 should be extended to allow an adult subject to a section 602 petition to move for a determination of unfitness under the facts presented in *Rucker* and here. To do otherwise would deprive an adult subject to juvenile court jurisdiction of his or her ability to seek adult court treatment. ■ However, we disagree with *Rucker* to the extent it holds the juvenile court must grant the motion if it finds the petitioner has knowingly, intelligently, and advisedly waived his or her rights to the benefits of juvenile process. The *Rucker* position eviscerates the discretion vested in the juvenile court, contrary to the legislative intent underlying the statutory scheme.

The *Rucker* court believed its holding was mandated by due process and questioned whether the People and the juvenile court could ever have a compelling interest to try an adult as a juvenile against the adult's wishes. (*Rucker, supra,* 75 Cal.App.3d at p. 202.) Relying upon *McKeiver v. Pennsylvania* (1976) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976], *Rucker* stated an adult has a constitutional right to jury trial while a juvenile does not and concluded it was therefore "inescapable" an adult could not be tried as a juvenile over his or her objection. (75 Cal.App.3d at p. 202.)

We question this analysis. *McKeiver,* while recognizing a person's constitutional right in a criminal trial, did not say that the right to such a trial turns on a person's age. *McKeiver* held that because the adjudicative phase of juvenile proceedings could not be equated with criminal proceedings, the juvenile court had correctly refused the minors' request for a jury trial. Thus under *McKeiver* age is irrelevant with the right to a jury trial resting solely on the nature of the proceedings. (See also *In re Javier A.* (1984) 159 Cal.App.3d 913, 928-929 [206 Cal.Rptr. 386]; *Serna v. Superior Court* (1985) 40 Cal.3d 239, 256 [219 Cal.Rptr. 420, 707 P.2d 793] [stating the nature of the proceedings and its consequences determine the applicability of the Bill of Rights not "labels of convenience."]) Neither the federal nor the state Constitutions guarantee jury trial in juvenile proceedings. (*McKeiver v. Pennsylvania, supra,* 403 U.S. 528 [29 L.Ed.2d 647]; *In re Daedler* (1924) 194 Cal. 320, 324, 332 [228 P. 467].)

Even if we were to accept *Rucker*'s position an adult has a constitutional right to jury trial based simply on his or her age at the time of trial, we question the *Rucker* implication the People and/or the juvenile court could never have a compelling interest to try an adult as a juvenile against the adult's wishes. Such an interest may exist where there is an existing relationship between the court and the individual seeking a determination of

unfitness. As previously discussed, once the juvenile court has jurisdiction over a minor, it may retain jurisdiction well into adulthood. (§ 607.) ▮ But, once the juvenile court finds a minor to be unfit to be tried as a juvenile for one offense, the court is without jurisdiction to proceed on any pending or future petitions. (See *In re Dennis J.* (1977) 72 Cal.App.3d 755 [140 Cal.Rptr. 463]; *People* v. *Superior Court (Woodfin)* (1982) 129 Cal.App.3d 970 [182 Cal.Rptr. 787]; *In re Shanea J.* (1984) 150 Cal.App.3d 831 [198 Cal.Rptr. 228].) A finding of unfitness in a case where the juvenile court has other matters pending could deprive the court of its existing jurisdiction to the extreme detriment of both the court and the People.

▮ Here, for example, if Joey had escaped for no other reason other than to take advantage of his *Rucker* right he would unilaterally be able to avoid future treatment under the juvenile system pursuant to the *In re Dennis J., supra,* 72 Cal.App.3d 755, line of cases. We believe the juvenile court and the People have a compelling interest to prevent the juvenile court from being deprived of jurisdiction by such manipulation.

We therefore conclude the juvenile court was not required to grant Joey's motion based simply on his having attained his majority and his having knowingly, intelligently, and advisedly waived his right to the benefits of juvenile process.[4] The court retained discretion under section 707 to evaluate the specified criteria and the special circumstances of this case and determine whether the court should retain jurisdiction or find Joey not amenable to juvenile process.

V

▮ A review of the record here shows the court may have decided to retain jurisdiction simply because the escape charges arose out of Joey's earlier juvenile incarceration. The court did not obtain a probation officer's report and did not appear to consider the criteria listed in section 707 in reaching its decision. The court erred in failing to do so. To properly exercise its discretion the court must evaluate whether Joey is amenable to juvenile process on the basis of the listed criteria. Under the unique procedural history of the case, the court's determination also requires analysis of Joey's interest in seeking treatment as an adult and the court's and People's interest in having him treated as a juvenile.

DISPOSITION

Let a peremptory writ issue directing the court to vacate its order denying Joey's motion. The matter is remanded to the juvenile court for further

---

[4]No question has been raised with respect to whether Joey intelligently and advisedly waived his rights. Joey's counsel claims that he did so and the circumstances seem to bear out that claim.

proceedings in accordance with this opinion and entry of a new order after proper consideration.

Benke, J., and Nares, J., concurred.