Filed 1/30/20; Certified for partial publication 2/11/20 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E069732 |
| v. | (Super.Ct.No. FVI1403390) |
| TAJAY MARCELL JOHNSON et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County. John M. Tomberlin, Judge. Affirmed in part; reversed in part and remanded with directions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant Kevin Tyrone Hairston.

Suzanne G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant Tajay Marcell Johnson.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Lynn G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Tajay Marcell Johnson and Kevin Tyrone Hairston of one count of second degree robbery (Pen. Code, § 211; count 1),[1] one count of carjacking (§ 215, subd. (a); count 2), one count of kidnapping to commit robbery (§ 209, subd. (b)(1); count 3), and one count of kidnapping for the purpose of carjacking (§ 209.5, subd. (a); count 4). They were both sentenced to life with the possibility of parole for each of the kidnapping offenses. The sentences for robbery and carjacking were stayed under section 654. We agree with defendants and the People that carjacking is a necessarily included lesser offense of kidnapping for the purpose of carjacking, and we therefore reverse defendants' convictions for carjacking. We further agree with both parties that the abstracts of judgment must be amended and that defendants' sentences need to be clarified, so we remand for that purpose.

Johnson was 17 years old when he committed the offenses. Charges were originally filed against him in criminal court. However, after voters enacted Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Proposition 57) during the pendency of the criminal proceeding, Johnson's case was transferred to juvenile court to determine whether he was fit to proceed as a juvenile or should be tried as an adult. At the beginning of the juvenile fitness hearing, Johnson's attorney stipulated, in Johnson's presence, that the case should proceed in criminal court based on the probation officer's report and recommendation. On appeal, Johnson argues that the statutory right to a

---

[1]     All further unlabeled statutory references are to the Penal Code.

2

juvenile fitness hearing could not be waived by his attorney on his behalf but rather required a personal waiver from Johnson himself.  We disagree.

Defendants also challenge the imposition of various fines and fees as due process violations under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  We conclude that some of those claims were forfeited, and as to the remainder any error was harmless.  We strike the $40 crime prevention fines as unauthorized, however, and order the trial court to impose the statutorily mandated $10 fine instead.  We otherwise affirm.

BACKGROUND

Late in the evening of August 28, 2014, the victim Christopher C. dropped off a friend at the friend's apartment complex in Victorville, California.  In the parking lot, he was approached by Hairston, Johnson, and a third person named Tommy.  Hairston asked Christopher C. if he had change for a $100 bill, which Christopher C. did not.  Christopher C. walked away from his car for some time and returned to discover that his cell phone was missing from the car.  When Christopher C. asked the three individuals if they had taken it, Hairston demanded that Christopher C. give Hairston the keys to the car.  Christopher C. refused.  Hairston pulled out a gun, put it near Christopher C.'s head, and forced Christopher C. into the back seat of the car after Christopher C. gave Hairston the keys.

All three individuals got into the car with Christopher C. and drove away.  Tommy sat in the back seat with Christopher C. and held the gun to Christopher C.'s head.  All three individuals warned Christopher C. to keep his head down and shut up.

3

The group picked up Johnson's girlfriend, X.B. (a minor), at another apartment building. At their next stop at a gas station, Hairston tased Christopher C. several times on his face, shoulder, and upper thigh after Christopher C. lied about not having any money available on his debit card. After leaving the gas station, they headed toward Las Vegas, Nevada. They eventually stopped at a casino in Las Vegas. Everyone in the vehicle went into the casino. Hairston and Tommy told Christopher C. that if he made any moves they would shoot him in the casino and that they were not concerned about getting caught.

When the group left the casino a short time later, everyone got back into Christopher C.'s car and headed to a gas station. Upon arrival, everyone exited the vehicle but Christopher C. and Tommy. Christopher C. noticed that the gun did not have a magazine in it, jumped out of the car, and ran toward the nearest hotel or casino. Christopher C. found a security guard. He later gave a statement to Las Vegas law enforcement and to local law enforcement in Victorville.

On August 29, 2014, a deputy with the San Bernardino County Sheriff's Department located Christopher C.'s car parked in a motel parking lot. The deputy saw someone exit a motel room, get into the car, and drive away. Johnson and X.B. were found in the motel room and arrested. The car was recovered, and a BB gun that looked like a semiautomatic handgun, a taser gun, a knife, and various other items were found in the trunk. Hairston was arrested less than two weeks later, and Christopher C. identified him in a photographic lineup.

4

DISCUSSION[2]

A. *Johnson's Stipulation to Proceed as an Adult*

Johnson contends that the juvenile court prejudicially erred by failing to obtain a personal waiver from him of his right to a juvenile fitness hearing. We disagree.

1. *Proposition 57 and the Juvenile Fitness Hearing Requirement*

Proposition 57 was enacted in November 2016 and eliminated a prosecutor's ability to file charges directly in criminal court against anyone who was 14 years or older at the time of the alleged offense. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303 (*Lara*).) Proposition 57 mandates that prosecutors must instead commence the action in the juvenile court, which then decides "whether the matter should remain in juvenile court or be transferred to adult court." (*Ibid.*; Welf. & Inst. Code, § 707, subd. (a).) Proposition 57 applies retroactively to pending criminal proceedings. (*Lara*, *supra*, at p. 309.)

Pursuant to section 707 of the Welfare and Institutions Code, the juvenile court must hold a hearing and determine whether a minor who is 16 years or older and alleged to have committed a felony is a "fit and proper subject to be dealt with" by the juvenile court or should be transferred to criminal court. (Welf. & Inst. Code, §§ 606, 602, 707,

---

[2]    Hairston filed his opening brief months before Johnson did. Nevertheless, Hairston prospectively joined any arguments made by Johnson in his brief. The People contend that such a generalized joinder is not permitted. We need not address the issue because the only argument that Johnson makes that is different from the arguments already made by Hairston concerns Johnson's status as a minor. That argument is not relevant to Hairston, who was an adult when the offenses were committed.

subd. (a)(1) & (3).)  That determination must be based on five enumerated statutory factors and a report submitted by a probation officer documenting "the behavioral patterns and social history of the minor."  (Welf. & Inst. Code, § 707, subd. (a)(1) & (3).)

  2. *Johnson's Juvenile Fitness Hearing*

  In January 2017, the superior court suspended criminal proceedings and certified Johnson to the juvenile court to hold a hearing pursuant to section 707 of the Welfare and Institutions Code to determine whether he should be prosecuted as an adult or was fit to be treated as a juvenile.  At the time of the hearing, Johnson was 19 years old.  The probation department prepared a report for the hearing and recommended that Johnson was unsuitable for juvenile court based on the degree of criminal sophistication exhibited by Johnson and the circumstances and the gravity of the offenses alleged.

  At the beginning of the juvenile fitness hearing, Johnson's attorney informed the court:  "Actually, we're going to not have a hearing, we're going to stipulate on the report.  [¶]  I would indicate to the court that I've had a doctor appointed to interview [Johnson], she did interview him and gives me no information that would facilitate him staying in the juvenile system."  The court sought clarification and asked Johnson's attorney if the attorney was in fact stipulating that Johnson was "transferable to adult court."  The attorney responded that he was so stipulating, and the prosecutor confirmed. Johnson's attorney acknowledged that the stipulation was based on the probation officer's report.  The juvenile court accepted the stipulation.  In so doing, the juvenile court noted that it had "reviewed the transfer report" and was basing its decision to accept

6

the stipulation on that report too.  Johnson's attorney acknowledged that the stipulation "ha[d] been discussed with the family, and [that Johnson] wishe[d] to proceed in adult court."  Johnson, his mother, and his brother were present in court.

      3.     *Personal Waiver of Right to a Juvenile Fitness Hearing Not Required*

When an accused is represented by counsel, as Johnson was, "'the accused surrenders all but a handful of "fundamental" personal rights to *counsel's* complete control of defense strategies and tactics.'"  (*In re Horton* (1991) 54 Cal.3d 82, 95 (*Horton*).)  "The reason is that when, as here, the accused exercises his or her constitutional right to representation by professional counsel, '"it is counsel, not defendant, who is in charge of the case."'"  (*People v. Hinton* (2006) 37 Cal.4th 839, 873-874 (*Hinton*), quoting *Horton*, *supra*, at p. 95.)  No clear set of criteria exists for deciding whether a right is so fundamental in nature as to require a personal waiver by the accused.  (*People v. Guzman* (1988) 45 Cal.3d 915, 936, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)  However, the rights for which a personal waiver is required comprise a "narrow exception" to the general rule. (*Hinton*, *supra*, at p. 874.)

Decisions falling within this "narrow exception" include (1) whether to plead guilty, (2) whether to waive the right to trial by jury, (3) whether to waive the right to counsel, (4) whether to waive the right to be free from self-incrimination, and (5) whether to present a defense at the guilt phase of a capital case when the court is aware of an express conflict between the defendant and the attorney.  (*Hinton*, *supra*, 37 Cal.4th at

p. 874; *Horton*, *supra*, 54 Cal.3d at p. 95 [citing cases].) By contrast, some of the rights that do not require a personal waiver from the accused include (1) the right to testify (*People v. Bradford* (1997) 14 Cal.4th 1005, 1052-1053); (2) in a capital case based on a prior-murder-conviction special-circumstance allegation, the right to have that allegation determined in a separate proceeding following a finding of first degree murder (*Hinton*, at p. 873); (3) the right to be present at pretrial conferences (*People v. Riel* (2000) 22 Cal.4th 1153, 1196); (4) in a capital case, the right to having a regularly appointed judge (as opposed to a temporary judge) preside over the trial (*Horton*, at pp. 97-98); and (5) the right to a jury trial in a proceeding to determine competence to stand trial, "even over the defendant's objection" (*People v. Masterson* (1994) 8 Cal.4th 965, 974).

No case law exists establishing that the right to a juvenile fitness hearing falls within the narrow category of fundamental rights for which a personal waiver by an accused is required. Johnson relies on *Rucker v. Superior Court* (1977) 75 Cal.App.3d 197, 200-201 (*Rucker*) as support for his claim that such a waiver is required by an accused who has reached adulthood. *Rucker* is inapposite. The issue there was whether an adult who was alleged to have committed the offense while a juvenile could personally "waive the benefits of juvenile law and demand that [s]he be dealt with according to the law of the land." (*Id*. at pp. 200-201.) The accused moved for a finding of unfitness before the probation officer had prepared a report, and the accused demanded that she be treated as an adult. The People did not oppose the motion. (*Id.* at p. 199.) The juvenile court denied the motion, concluding that a minor lacked the authority to move for a

8

declaration of unfitness.  (*Id.* at p. 200.)  The appellate court reversed, concluding that an adult "may not be tried as a juvenile over [her] objection," regardless of the apparent benefits of being treated as a juvenile.  (*Id.* at p. 202.)  In concluding that the accused's waiver was valid, the court noted that "[t]he only factual issue for determination in petitioner's fitness hearing was whether petitioner knowingly, intelligently, and advisedly waived her rights to the benefits of juvenile process," which the record indicated had happened.  (*Id.* at p. 203.)

*Rucker*, *supra*, 75 Cal.App.3d 197 therefore stands for the proposition that an adult who is alleged to have committed an offense as a juvenile may waive the right to proceed in juvenile court.  The validity of the waiver itself was at issue in *Rucker*, not the form that the waiver must take or from whom the waiver must be obtained.  Because the accused's waiver was personal, *Rucker* analyzed whether that waiver was knowing and intelligent after the accused was given a proper advisement of rights.  *Rucker* said nothing about whether a personal waiver was required.  "It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court."  (*People v. Harris* (1989) 47 Cal.3d 1047, 1071.)

Johnson does not cite any other authority concerning when or how a juvenile may waive the right to proceed in juvenile court.  He nevertheless urges that the right to a juvenile fitness hearing implicates a defendant's "'core autonomy interests'" that require a personal waiver because of the drastic difference in penal consequences between the treatment of a juvenile and an adult who have committed the same crime.  There is no

9

question that "[t]he possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment." (*Lara*, *supra*, 4 Cal.5th at p. 303.) However, the gravity of the potential consequences that might result from the waiver of a right is not determinative of whether the waiver must be personal. (*Hinton*, *supra*, 37 Cal.4th at pp. 873-874 [counsel can waive a capital defendant's right to a separate hearing on the truth of a prior-murder special-circumstance allegation despite the fact that introduction of the inflammatory evidence could affect the finding of guilt and expose the defendant to a death sentence].) Johnson cites no authority holding that the exposure to potentially significant consequences in waiving a right dictates that the right must be personally waived.

Johnson relies on *People v. Trujillo* (2015) 60 Cal.4th 850, 859 (*Trujillo*) for the proposition that an express waiver by a defendant is required if a constitutional right or "'core autonomy interests'" is at stake. *Trujillo* is not helpful. *Trujillo* described the situations in which a personal waiver is required of the accused as involving "core autonomy interests." (*Ibid.*) The only cases it cited as examples involved constitutional rights, such as "the constitutional rights relinquished by a plea of guilty," "the right to counsel," and "the right to appeal." (*Ibid.*) *Trujillo* did not explain what was meant by "core autonomy interests." The Court did conclude, however, that "no comparably significant right" was implicated by the waiver of the statutory right to a court hearing on the defendant's ability to pay probation supervision and presentence investigation fees.

10

(*Ibid.*)  The right to a juvenile fitness hearing is conferred by statute and thus is more like the statutory right at issue in *Trujillo* than the constitutionally derived rights that *Trujillo* described as requiring a waiver.

Relying on *People v. Johnson* (2002) 28 Cal.4th 1050 (*Johnson*), Johnson contends that statutory rights also can be significant enough to require a personal waiver. *Johnson* too is not helpful.  In *Johnson*, the Court concluded that "a defendant may expressly waive entitlement to section 2900.5 credits against an ultimate jail or prison sentence for past and future days in custody."  (*Johnson*, *supra*, at pp. 1054-1055.)  The Court further stated:  "As with the waiver of any significant right by a criminal defendant, a defendant's waiver of entitlement to section 2900.5 custody credits must, of course, be knowing and intelligent."  (*Id.* at p. 1055.)  The issue in *Johnson* was whether the statutory right could be waived, not by whom it could be waived.

Johnson infers from the knowing and intelligent waiver requirement in *Johnson*, *supra*, 28 Cal.4th at page 1055, that a defendant's waiver to a significant statutory right—such as to a juvenile fitness hearing, he contends—should be personal.  We disagree.  The requirement that a waiver be knowing and intelligent is not synonymous with the requirement that the waiver be made personally by the accused.  The trial judge "may safely assume that [an accused], who is ably represented" and who waives the right to a juvenile fitness hearing is doing so "with the advice and under the direction of competent trial counsel."  (*People v. Bradford*, *supra*, 14 Cal.4th at p. 1053 [constitutional right to testify does not require a personal waiver].)  "If that assumption is incorrect, defendant's

11

remedy is not a personal waiver in open court, but a claim of ineffective assistance of counsel." (*Ibid.*)

The statutory right to a juvenile fitness hearing does not qualify as the type of right that cannot be waived by counsel. Unlike the fundamental matters for which counsel cannot waive on behalf of his or her client, this right is "merely statutory, not constitutional." (*Hinton*, *supra*, 37 Cal.4th at p. 874; *People v. Masterson*, *supra*, 8 Cal.4th at pp. 969, 972.) The decision to waive the right to a juvenile fitness hearing for an accused who has reached adulthood is a tactical decision that counsel can make on behalf of his or her client. (*Hinton*, at p. 874.)

For all of these reasons, we conclude that the juvenile court did not err by failing to secure an express personal waiver of the right to a juvenile fitness hearing from Johnson.

B. *Necessarily Included Lesser Offense*

Defendants contend that their convictions for carjacking should be reversed because carjacking is a necessarily included lesser offense of kidnapping for the purpose of carjacking, of which they both were convicted. The People agree, and we concur. Although a criminal defendant generally "may receive multiple convictions for offenses arising out of a single act or course of conduct," "multiple convictions may not be based on necessarily included offenses." (*People v. Villa* (2007) 157 Cal.App.4th 1429, 1434.) As the parties correctly agree, "carjacking is a necessarily lesser included offense of

12

kidnap[ping] during a carjacking."  (*People v. Montes* (2014) 58 Cal.4th 809, 898.)  We therefore reverse defendants' convictions for carjacking.

C. *Hearing on Ability to Pay Fines, Fees, and Restitution*

At sentencing for both Hairston and Johnson, the court ordered each defendant to pay a $280 court operations and facilities fee (§ 1465.8, subd. (a)(1); Gov. Code, § 70373), and a crime prevention fine of $40 (§ 1202.5) with an attendant $1 DNA penalty (Gov. Code, § 76104.6, subd. (a)(1)).  In addition, Hairston was ordered to pay a $10,000 restitution fine, and Johnson was ordered to pay a $2,100 restitution fine.  In supplemental briefing, both defendants argue that the court violated their constitutional rights by assessing those amounts without holding a hearing to determine their ability to pay.  For this argument, they rely on *Dueñas*, *supra*, 30 Cal.App.5th 1157, which was decided by another appellate district while these appeals were pending.

*Dueñas* held that it violates due process under the federal and state Constitutions to impose the court operations and facilities fees without first determining the convicted defendant's ability to pay them.  (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1168-1169.)  In addition, "to avoid serious constitutional questions" raised by the statutory restitution scheme, the court must stay execution of the mandatory restitution fine unless the court determines that the defendant has the ability to pay it.  (*Id.* at p. 1172.)  The same court that decided *Dueñas* has since clarified that, at the ability to pay hearing, the defendant bears the burden of showing his or her inability to pay, and the court "must consider all

13

relevant factors," including "potential prison pay during the period of incarceration to be served by the defendant." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)[3]

Here, the People do not attack *Dueñas*'s due process analysis or argue that *Dueñas* was wrongly decided with respect to the court operations and facilities fees. Rather, the People contend that defendants forfeited any claim of error under *Dueñas* by failing to make the argument in the trial court. This contention lacks merit with respect to the court operations and facilities fees. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1033 (*Jones*).) Defendants' sentencing occurred before *Dueñas* was decided. "[A] due process objection would have been 'futile or wholly unsupported by substantive law then in existence.'" (*Ibid.*) And because "*Dueñas* was unforeseeable," we decline to find forfeiture as to the court operations and facilities fees. (*Ibid.*)

We do find forfeiture, however, as to the restitution fine and the crime prevention fine. The restitution fine imposed for both defendants was greater than the statutory minimum amount of $300. (§ 1202.4, subd. (b)(1).) For those fines, the law at the time of sentencing would have permitted the court to consider Johnson's or Hairston's inability to pay more than the minimum restitution fine. (§ 1202.4, subd. (c).) Similarly, in imposing a crime prevention fine against a defendant convicted of an enumerated theft

---

[3]     The California Supreme Court has granted review of the issues presented by *Dueñas* in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844. The Court will decide whether a court must "consider a defendant's ability to pay before imposing or executing fines, fees, and assessments," and if so, "which party bears the burden of proof regarding defendant's inability to pay." (*People v. Kopp*, review granted, Nov. 13, 2019, S257844 [2019 Cal. Lexis 8371].)

14

or robbery offense, the court is required to consider the defendant's ability to pay. (§ 1202.5, subd. (a).) Consequently, Hairston and Johnson forfeited their objections that the court failed to consider their ability to pay the restitution and crime prevention fines.[4] (*People v. Taylor* (2019) 43 Cal.App.5th 390, 399-400; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [argument about restitution fine above the minimum forfeited]; *People v. Crittle* (2007) 154 Cal.App.4th 368, 371 (*Crittle*) [failure to object to a crime prevention fee based on an inability to pay results in the forfeiture of any claimed error].)

The court imposed $280 in court operations and facilities fees on both defendants without determining their ability to pay. That was error under *Dueñas*, as the People concede. We therefore must remand for an ability to pay hearing unless the error was harmless. (*Jones*, *supra*, 36 Cal.App.5th at pp. 1034-1035.) *Dueñas* determined that the error was of constitutional magnitude, so we inquire whether the failure to conduct an ability to pay hearing was harmless beyond a reasonable doubt. (*Id.* at p. 1035.) We will find *Dueñas* error harmless if the record demonstrates, beyond a reasonable doubt, that the defendant cannot establish his or her inability to pay. (*Ibid.*; *Chapman v. California* (1967) 386 U.S. 18, 24.)

Neither Johnson nor Hairston can make such a showing. To determine defendants' ability to pay, we can look at their future earning capacity, including prison

---

**4**     Given our conclusion that defendants forfeited their arguments about the restitution fine and the crime prevention fine, we need not address defendants' argument that an Eighth Amendment analysis and not a due process analysis should apply with respect to those fines.

15

wages.  (*Jones*, *supra*, 36 Cal.App.5th at p. 1035; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.)  Every able-bodied prisoner in California is required to work.  (§ 2700.)  Monthly wages in prison for full-time employment vary from a minimum of $12 to a maximum of $56.  (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1)-(2).)  Fifty percent of defendants' wages and any trust account deposits will be deducted to pay any outstanding restitution fine, plus another five percent for the administrative costs of this deduction.  (§ 2085.5, subds. (a), (e); Cal. Code Regs., tit. 15, § 3097, subd. (f).)

There is no direct evidence in the record about whether defendants are able-bodied and therefore among the class of prisoners required or able to work.  However, we can infer from the manner in which the crimes were committed that defendants were able-bodied at that time.  In addition, the presentencing probation officers' reports prepared in November 2017 confirm that Hairston and Johnson remained able-bodied at that time.  Johnson was listed in "fair" health with a diagnosis of asthma for which he had an inhaler, and Hairston was listed in "good" health.  From this evidence and defendants' ages (20 years old for Johnson and 26 years old for Hairston) at the time of sentencing, there is sufficient evidence from which we can infer that they are able-bodied to perform work in prison.

Assuming that Johnson and Hairston earn the minimum monthly wage in prison ($12) and do not have any money added to their trust accounts, and that the entire restitution fines ($10,000 for Hairston and $2,100 for Johnson) are outstanding, they will

16

have at least $5.40 per month to pay $280 in fees. At that rate, they will pay off the fees in 52 months or four years and four months.

Hairston and Johnson were both sentenced to life with the possibility of parole. The minimum parole eligibility date for life with the possibility of parole is seven years. (§ 3046, subd. (a).) Because Hairston was sentenced under "The Three Strikes" law, his minimum eligibility date is doubled. (§ 667, subd. (e)(1).) Hairston therefore will be eligible for parole for the first time in 14 years.

Hairston received 1372 days of custody credit, which amounts to approximately three years and nine months. Assuming that Hairston is released on his first eligibility date, Hairston will have over 10 years in prison to pay the $280 in fees from his prison wages, which is more than double the amount of time he should need if he earns only the minimum amount throughout that period. Because Hairston will be able to pay the fees with his prison wages alone, we conclude that the *Dueñas* error was harmless as to him.

Johnson received 1540 days of custody credit, which amounts to slightly less than four years and three months. He therefore will be eligible for parole in approximately two years and nine months. Assuming that Johnson is paroled on the earliest possible date and that he earns the minimum monthly wage in prison throughout his period of imprisonment, he will have less than $150 in fees to pay after being released from prison. Hairston will be 27 or 28 years old at the time. It is reasonable to infer that he will be able to gain some sort of lawful employment by which he will be able to pay the remainder. On the other hand, if Johnson is not released on the earliest possible date, his

17

additional prison wages (plus postrelease employment, if necessary) will enable him to pay the remainder.

For all of these reasons, we conclude that the failure to conduct an ability to pay hearing for the court operations and facilities fees was harmless beyond a reasonable doubt.[5]

D. *Crime Prevention Fine*

We requested supplemental briefs on whether the trial court erred by imposing four $10 crime prevention assessment fines under subdivision (a) of section 1202.5 based on the four convictions, instead of imposing one $10 fine for the entire case. Defendants and the People agree that the court should have assessed a single $10 fine under section 1202.5 and not $10 per conviction. We concur. (*Crittle*, *supra*, 154 Cal.App.4th at p. 371.) Section 1202.5 authorizes a $10 fine to be imposed "[i]n any case" in which a defendant is convicted of any of the enumerated theft or robbery offenses. (§ 1202.5, subd. (a).) The section does not authorize the imposition of a $10 fine per offense. (*Ibid.*; *Crittle*, at p. 371.) Because only one $10 crime prevention fine was authorized under section 1202.5, subdivision (a), we strike the three additional $10 fines assessed under that section. (*Crittle*, at p. 371.)

---

[5]    Because we conclude that the *Dueñas* error was harmless beyond a reasonable doubt with respect to the $280 court operations and facilities fees, it follows that the error is also harmless as applied to the new reduced fee of $210 that will apply now that the carjacking convictions are reversed.

E. *Amendment of Abstracts of Judgment*

Defendants contend that their abstracts of judgment should be corrected so that they accurately reflect the sentences imposed. The People agree, and we concur.

"When there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls." (*People v. Morales* (2014) 224 Cal.App.4th 1587, 1594.) We have the inherent authority to correct an abstract of judgment or a minute order that does not accurately reflect the oral judgment of the trial court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

1. *Johnson's Abstract of Judgment*

For Johnson, the trial court initially stated: "Now, Counts 3 and 4, I'm going to make concurrent." However, in imposing the sentence, the trial court ordered: "I'm going to sentence you—I'm going to deny probation. Sentence you to [t]he California State Prison for the term of life with the possibility of parole. [¶] For Count 4, kidnapping during a carjacking . . . . I'm going to sentence you to life with the possib[ility] of parole. For Count 3, kidnapping for robbery, I'm going to order that will be served concurrent with Count 4 pursuant to [section] 654." The court then imposed a three year sentence for count 1 (robbery) and a five year sentence for count 2 (carjacking), both of which it stayed under section 654.

The abstract of judgment incorrectly lists the sentences for life with the possibility of parole as being imposed for counts 1 and 2, instead of counts 3 and 4. That is incorrect. On a different page in the abstract of judgment, the sentence for count 1 is

19

listed as a five year sentence that is stayed. That too is incorrect and needs to be corrected to reflect the sentence orally imposed by the court—three years.

In the abstract, the sentence for count 3 is listed as being concurrent to that for count 4. However, the court indicated that it was imposing the concurrent sentence under section 654, but section 654 is not applicable to concurrent sentences. We remand for the trial court to clarify whether the sentences imposed for counts 3 and 4 are intended to be concurrent or whether the court intended to stay the sentence for count 4 under section 654.

2. *Hairston's Abstract of Judgment*

For Hairston, the trial court imposed the following sentence: "I'm going to order probation is denied. I'm going to sentence you to the California State Prison for two— it's one life term doubled for two life terms." The court further ordered: "I'm sentencing you to life with the possibility of parole for Count 3 [kidnapping to commit robbery] and Count 4 [kidnapping during carjacking]. I'm going to sentence you to 18 years for Count 2 [carjacking], and 10 years for Count 1 [robbery], but I'm ordering those stayed pursuant to [section] 654."

In the sentencing minute order and the abstract of judgment, the life sentences for counts three and four are listed as running consecutively. The parties correctly agree that the trial court did not order the life sentences to run consecutively. However, as the parties also agree, it is not clear whether the trial court intended that the life sentences run concurrently or that the sentence for count 4 be stayed under section 654.

20

While the oral pronouncement of judgment lacks clarity on the sentence imposed, we concur that the trial court did not impose consecutive sentences for counts 3 and 4. At no point during the sentencing hearing did the trial judge say the word "consecutive," let alone set forth a statement of reasons for imposing consecutive sentences. (Cal. Rules of Court, rule 4.406(b)(5).) We therefore agree with the parties that the trial court did not impose consecutive sentences for counts 3 and 4, so the minute order and the abstracts of judgment are incorrect. Because it is not clear whether the trial court intended that the sentence for count 4 run concurrently to the sentence for count 3 or be stayed, the matter is remanded to the trial court for clarification of the sentence orally imposed for count 4. The abstract of judgment for Hairston should be amended accordingly.

## DISPOSITION

We reverse the convictions for carjacking (count 2) for Hairston and Johnson. For both defendants, the trial court is directed to: (1) strike the $40 crime prevention fines under section 1202.5, subdivision (a) and to impose a new fine under that statute of $10 for each defendant, and (2) strike the $280 court operations and facilities fees (§ 1465.8, subd. (a)(1); Gov. Code, § 70373) and to impose a new fee of $210 for each defendant. The trial court is directed to correct Johnson's abstract of judgment to reflect that: (1) the sentences of life with the possibility of parole were imposed for kidnapping for the purpose of robbery (count 3) and kidnapping for the purpose of carjacking (count 4), and (2) the sentence for robbery (count 1) is three years. For Hairston, the trial court is directed to correct the abstract of judgment and the minute order from the sentencing

21

hearing to delete the statement that the sentences for counts 3 and 4 were imposed consecutively. For both defendants, the trial court is further ordered to: (1) clarify whether the sentences of life with the possibility of parole imposed for counts 3 and 4 were intended to run concurrently or whether the sentence for count 4 was intended to be stayed pursuant to section 654, and (2) forward certified copies of the amended abstracts of judgment to the California Department of Corrections and Rehabilitation. The judgments are otherwise affirmed.

MENETREZ
J.

We concur:

RAMIREZ
P. J.

MCKINSTER
J.

Filed 2/11/20

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | E069732 |
| Plaintiff and Respondent, | |
| v. | (Super.Ct.No. FVI1403390) |
| TAJAY MARCELL JOHNSON et al., | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendants and Appellants. | |

THE COURT:

Pursuant to California Rules of Court, rule 8.1120(a), the Attorney General has made a request for partial publication of the nonpublished opinion in this matter that was filed on January 30, 2020. Specifically, the Attorney General has requested that the opinion be certified with the exception of sections B and C of the Discussion. We agree that section A of the Discussion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c).

We therefore grant the request in part and order that this opinion be certified for partial publication pursuant to California Rules of Court, rule 8.1105(b). The opinion filed in this matter on January 30, 2020, is therefore certified for publication with the exception of sections B through E of the Discussion.

CERTIFIED FOR PARTIAL PUBLICATION

MENETREZ _____
                                        J.

We concur:

RAMIREZ _____
                      P. J.
McKINSTER _____
                     J.